STEPHENS, J.
Plaintiff appeals as of right the circuit court’s order granting summary disposition to defendant under MCR 2.116(C)(7), (8), and (10). We affirm in part and reverse in part.
*530 I. BACKGROUND
Plaintiff, Debra Major, was an employee of defendant, village of Newberry. Kelevant to this case, defendant operated two departments—the department of public works and the department of water and light. Plaintiff began working for defendant on May 15,2002. From 2002 to 2008, plaintiff held the position of meter reader in defendant’s department of public works; in 2010 and 2011, she held the position of apprentice lineman in the department of water and light. Plaintiff applied for the position of apprentice lineman[1] in 2008, but defendant’s village council voted to not offer plaintiff the position. Plaintiff filed a union grievance on July 3, 2008. Later in December 2008, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that plaintiff was denied the apprentice lineman position for no other reason than because she was female. The EEOC charge was resolved in an October 2010 conciliation agreement in which plaintiff agreed not to sue defendant with respect to the allegations in the discrimination charge, and plaintiff received the position of apprentice lineman.
Plaintiff was awarded the position of apprentice lineman on December 21, 2010. Two months later, on February 22,2011, in accordance with her rights under the union contract, plaintiff wrote Beverly Holmes, defendant’s village manager, and requested to return to her previous position of meter reader. Plaintiff cited two reasons for her decision. Plaintiff claimed that Matthew Perry (the lineman supervisor) had “done *531 everything in his power to make” her 60-day period on the job “miserable” and that she did not see how she could attain the required 7,000 hours of work required to become a journeyman lineman.
Dissatisfied with her tenure as a lineman, plaintiff filed a second charge with the EEOC in July 2011, alleging that she was discriminated against because of her sex and that she was subjected to retaliation after filing her 2008 charge of discrimination. On August 3, 2012, plaintiff was notified by the EEOC that “[t]he facts, evidence, and information obtained throughout the course of the investigation fails to establish that you were discriminated against on the basis which you alleged in the charge.” The EEOC letter informed plaintiff that “UPON RECEIPT OF THE DISMISSAL AND NOTICE OF RIGHTS, IT IS IMPERATIVE THAT YOU FILE SUIT IN THE UNITED STATES DISTRICT COURT WITHIN NINETY (90) DAYS OF RECEIPT. FAILURE TO DO SO WILL RESULT IN YOUR LOSS OF RIGHT TO PROCEED IN COURT.”
Plaintiff filed a charge with Michigan’s Department of Civil Rights (MDCR) that was dismissed on September 19, 2012. The MDCR Notice of Disposition and Order of Dismissal provided that plaintiff could either request reconsideration of the refusal to issue a charge within 30 days after the date the notice was mailed, or appeal the notice of dismissal to “the circuit court of the State of Michigan having jurisdiction within 30 days of the date of service of an appealable order.”
On October 17, 2012, plaintiff received notice from the United States Department of Justice, Civil Rights Division, informing her that because “180 days ha[d] elapsed since the date the [EEOC] assumed jurisdiction over the charge, and no suit based thereon [was] filed by this Department,” plaintiff still had the right to *532 institute a civil action against defendant under Title VII of the federal Civil Rights Act of 1964 within 90 days of plaintiffs receipt of the notice.
Plaintiff filed a complaint in the circuit court against defendant on April 24, 2013, alleging gender discrimination, age discrimination, and retaliation under Michigan’s Elliott-Larsen Civil Rights Act (CRA), MCL 37.2101 et seq. As a basis for her gender discrimination claim, plaintiff alleged that she and other female employees were subjected to disparate treatment and were required to perform ministerial tasks when male employees were not. Plaintiff further alleged that she was not promoted to the position of apprentice lineman because she was not provided with the same training as was the male apprentice, Jake Lewis. Plaintiff also alleged that she worked in a hostile work environment because she was harassed with unwelcome comments and incidents of conduct that were offensive and targeted toward her gender. As a basis for her age discrimination claim, plaintiff alleged that defendant (1) failed to promote her to the position of apprentice lineman because of her age of 54 at the time she applied in 2008, (2) provided the necessary training to a younger employee, again Jake Lewis, and (3) changed the requirements for the position after it was posted. As a basis for her retaliation claim, plaintiff alleged that defendant retaliated against her after she filed a claim with the EEOC against defendant in December 2008.
Defendant filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10). Plaintiff filed a brief in response supported by the affidavits of Terrence Webb (defendant’s previous president and accounts payable clerk), Cheryl Withrow (trustee of defendant’s council and council representative to *533 defendant’s department of water and light board), and William McNamara (former supervisor for defendant).
After a hearing, the trial court issued its decision on June 5, 2014. The court granted defendant’s motion for summary disposition in part under MCR 2.116(C)(7), concluding that plaintiffs complaint was time-barred. The court reasoned that plaintiff failed to file her claim within the EEOC-stated 90-day period after her complaint was investigated by the MDCR, and that the statutory three-year period of limitations related to injuries to persons or property, MCL 600.5805(10), was inapplicable.
The trial court also granted defendant’s motion for summary disposition under MCR 2.116(C)(8) and (10), concluding that
[t]he arguments presented by the Plaintiff. . . are either unsupported by the facts or are conclusory in nature. The Plaintiff was awarded the Apprentice Lineman’s position, and within 60 days tendered her letter seeking to return to her former position per her contract for those reasons noted above. The record provided to the Court reveals the extent [defendant] went to investigare] Plaintiffs claims, both by [defendant] and an independent review, [and the claims] were found to be without merit.... [T]his Court is unable to find either a valid and supportable claim that may be established by the Plaintiff, or a genuine issue on which the Plaintiff can support her position.
Plaintiff now seeks relief from this Court.
II. STATUTE OF LIMITATIONS
Plaintiff first argues that the trial court erred by granting defendant’s motion for summary disposition under MCR 2.116(C)(7) based on a finding that she filed her complaint outside the period of limitations. We agree.
*534 A. STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision on a motion for summary disposition. Waltz v Wyse, 469 Mich 642, 647; 677 NW2d 813 (2004). “Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by the statute of limitations.” Id. To determine whether summary disposition was proper under MCR 2.116(C)(7), “this Court consider[s] all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.” Id. at 647-648 (quotation marks and citation omitted; alteration in original). Issues of statutory interpretation, like the interpretation of the CRA, are questions of law that this Court also reviews de novo. Krohn v Home-Owners Ins Co, 490 Mich 145, 155; 802 NW2d 281 (2011).
B. ANALYSIS
At issue in this case is which limitations period applies to plaintiffs claims. Plaintiff argues that her case is governed by the three-year period of limitations applicable to actions to recover damages for injury to a person, MCL 600.5805(10). The trial court applied the limitations periods set forth by the EEOC and the MDCR for appealing their respective dismissals of her claims. We hold that the trial court erred.
Contrary to the trial court’s conclusion, the appropriate period of limitations is three years. MCL 600.5805(10) provides, “Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property.” The CRA, in part, prohibits an *535 employer from discriminating against an employee or an individual in an apprenticeship or training program on the basis of sex or age with respect to a term, condition, or privilege of employment. MCL 37.2202(l)(a); MCL 37.2205. The CRA also prohibits retaliation or discrimination because the person made a charge, filed a complaint, or opposed a violation of the act. MCL 37.2701. A person alleging a violation of the act may bring a civil action for damages “in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his [or her] principal place of business.” MCL 37.2801(1) and (2). The CRA “shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of the state.” MCL 37.2803.
When interpreting a statute,
[t]he primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent.... [Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks, citation, and alteration omitted).]
“[Statutes must be read as a whole and in context[.]” Cichewicz v Salesin, 306 Mich App 14, 25; 854 NW2d 901 (2014). “[A]lthough only an aid to interpretation, [this Court has noted] that the maxim expressio unius *536 est exclusio alterius (the expression of one thing suggests the exclusion of all others) means that the express mention of one thing in a statutory provision implies the exclusion of similar things.” Id. at 33 (quotation marks and citation omitted; first alteration in original).
In Garg v Macomb Co Community Mental Health Servs, 472 Mich 263, 270; 696 NW2d 646 (2005), the plaintiff filed an action in July 1995 under the CEA, claiming that she was denied a promotion and treated poorly due to her national origin and that she was retaliated against for opposing sexual harassment. She further claimed that her employer’s actions were in retaliation for her filing of a union grievance in June 1987 in which she claimed “discrimination based on her national origin and color.” Id. at 268-269. The defendant’s retaliatory conduct took place over an eleven-year period and included acts that occurred after she filed the CRA action in July 1995. Id. at 286 n 13. In applying the three-year period of limitations to the plaintiffs claim, our Supreme Court noted that “it is appropriate ... in discrimination cases [to] turn to federal precedent for guidance in reaching [a] decision.” Id. at 278 (quotation marks and citation omitted; first alteration in original). However, “[w]hile federal precedent may often be useful as guidance in this Court’s interpretation of laws with federal analogues, such precedent cannot be allowed to rewrite Michigan law.” Id. at 283. The Court rejected application of the continuing violations doctrine to actions filed under the CRA; the continuing violations doctrine allows complainants filing federal Title VII claims to recover damages for discriminatory acts beyond those that occurred within the 180-day period from which the claim must be filed with the EEOC. Id. at 282-283. The Court concluded that “a person must file a claim under *537 the [CRA] within three years of the date his or her cause of action accrues, as required by [MCL 600.5805(10)].” Id. at 284.
While the Garg decision did not consider whether the specified filing limits stated in right-to-sue letters or dismissal-of-claim letters issued by either the EEOC or MDCR trump the period of limitations in MCL 600.5805(10), our Supreme Court was clear that the three-year period of limitations in MCL 600.5805(10) applies to persons filing a claim under the CRA, which was the claim filed by plaintiff on April 24, 2013, in the instant case in the Luce Circuit Court. Further, while the CRA does not specify the period in which an action must be filed if the MDCR dismisses a person’s charge without a hearing, it does specify that if the MDCR holds a hearing and determines that the employer did or did not engage in a discriminatory practice prohibited by the CRA, it shall state its findings of fact and conclusions of law and issue a final order dismissing the complaint. MCL 37.2604; MCL 37.2605(1). If the MDCR issues a final order following a hearing, the complainant and the respondent have a right to appeal the decision in the appropriate circuit court within 30 days of the final order of the MDCR. MCL 37.2606(1). By explicitly limiting the time in which an appeal may be filed in the circuit court following a hearing and the final order and decision of the MDCR, the statutory scheme implies that such limitations are not applicable to a dismissal issued after plaintiff withdrew her complaint or requested a right-to-sue letter from the EEOC. Cichewicz, 306 Mich App at 33. Moreover, “[i]t is a well-established rule of statutory construction that this Court will not read words into a statute.” Byker v Mannes, 465 Mich 637, 646-647; 641 NW2d 210 (2002). Allowing the MDCR, in this situation, to alter the three-year period of limitations for filing a discrimina *538 tion claim under the CEA would read language into the plain text of the statute that does not exist. Specifically, it would impose a claim-filing requirement on an individual who exercises his or her right to file a charge with the MDCR even though a full hearing and decision on the merits did not occur. Therefore, the trial court erred by granting defendant summary disposition under MCR 2.116(C)(7).
Defendant erroneously claims that plaintiff filed her claim in the wrong court—that on the basis of the EEOC letter sent to her on August 2, 2012, which found no merit in her charge, she was required to file her claim in the United States District Court within 90 days of receiving the notice. However, the charge of discrimination filed with the EEOC alleged discrimination “in violation of Title VII of the Civil Rights Act of 1964, as amended [42 USC 2000e et seq.].” The claim filed in the trial court in this case alleges a violation of the CRA, which provides that a person alleging a violation of the act may bring a civil action for damages in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his or her principal place of business. MCL 37.2801(1) and (2). We are unaware of any authority that allows the EEOC’s dismissal of a Title VII claim to control where plaintiff may file her CRA claim, and defendant does not cite any supporting authority for this assertion.
Finally, defendant’s 2008 accrual-date argument is also misplaced. Although plaintiff mentions defendant’s failure to promote her to the apprentice lineman position in her complaint, the allegation was made because defendant provided Lewis with the necessary hours to accomplish the position but failed to provide *539 her with the same opportunity. Further, plaintiff states in her appeal brief that the alleged discrimination and retaliation complaint arose out of events that occurred after the date she was appointed to the apprentice lineman position, or December 22, 2010. Because plaintiff filed the instant action on April 24, 2013, her complaint was timely in that she filed it within the prescribed three-year period of limitations from the date of its accrual. MCL 600.5805(10).
III. MICHIGAN’S ELLIOTT-LARSEN CIVIL RIGHTS ACT
Plaintiff next argues that the trial court erred by summarily dismissing her claims against defendant of age and sex discrimination under the CRA. The CRA provides in part that an employer may not discriminate against an individual with respect to his or her age or sex. MCL 37.2202(l)(a). As to plaintiffs individual claims of age and sex discrimination, we agree in part and disagree in part.
A. STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision on a motion for summary disposition. Jimkoski v Shupe, 282 Mich App 1, 4; 763 NW2d 1 (2008).[2] In addition,
*540 [a] motion brought under MCR 2.116(0(10) tests the factual support for a claim. The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(0(10). When reviewing a decision on a motion for summary disposition under MCR 2.116(0(10), this Court must consider the documentary evidence presented to the trial court in the light most favorable to the nonmoving party. A trial court has properly granted a motion for summary disposition under MCR 2.116(0(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. [American Home Assurance Co v Mich Catastrophic Claims Ass’n, 288 Mich App 706, 716-717; 795 NW2d 172 (2010) (quotation marks and citations omitted).]
B. ANALYSIS
“Proof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence.” Sniecinski v Blue Cross & Blue Shield of Mich, 469 Mich 124, 132; 666 NW2d 186 (2003). “In cases involving direct evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case.” Id. “Direct evidence,” in the context of a CRA claim, is “evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer’s actions.” Hazle v Ford Motor Co, 464 Mich 456, 462; 628 NW2d 515 (2001) (quotation marks and citation omitted).
In a case where direct evidence is lacking, a plaintiff must establish a prima facie case of age discrimination by proving that “(1) she was a member of the protected class, (2) she suffered an adverse employment action, *541 (3) she was qualified for the position, and (4) she was replaced by a younger person.” Lytle v Malady (On Rehearing), 458 Mich 153, 177; 579 NW2d 906 (1998) (opinion by WEAVER, J.).
When there is no direct evidence of sex discrimination, a plaintiff must establish a prima facie case by proving that “she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man. The crux of a sex discrimination case is that similarly situated persons have been treated differently because of their sex.” Marsh v Dep’t of Civil Serv (After Remand), 173 Mich App 72, 79; 433 NW2d 820 (1988).
If a plaintiff establishes a prima facie case of discrimination based on either age or sex, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken. Hazle, 464 Mich at 464. “There is no exhaustive list of what constitutes adverse employment actions. And what might constitute an adverse employment action in one employment context might not be actionable in another employment context.” Chen v Wayne State Univ, 284 Mich App 172, 201; 771 NW2d 820 (2009) (citations omitted). “ ‘ “[T]ermination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation” ’ ” have all been recognized as adverse employment actions. Wilcoxon v Minnesota Mining & Mfg Co, 235 Mich App 347, 363; 597 NW2d 250 (1999), quoting Kocsis v Multi-Care Mgt, Inc, 97 F3d 876, 886 (CA 6, 1996), quoting Crady v Liberty Nat’l Bank & Trust Co, 993 F2d 132, 136 (CA 7, 1993). *542 To prevail on the claim, a plaintiff must then present evidence that the explanation provided by his or her employer constituted a pretext for discrimination. Hazle, 464 Mich at 465-466.
A plaintiff can establish that a defendant’s articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [Feick v Monroe Co, 229 Mich App 335, 343; 582 NW2d 207 (1998).]
In cases of both direct and indirect evidence, “a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision.” Sniecinski, 469 Mich at 134-135.
1. DIRECT EVIDENCE OF AGE AND SEX DISCRIMINATION
Plaintiff presented direct evidence of age discrimination. The evidence plaintiff presented for her discrimination claim was that her direct supervisor, foreman Perry, said: “You know . . . you’re in your 50s now. And by the time you go through the school, if you go through the school, you’ll be in your mid 50s. Do you think you’ll be able to climb a pole then?” Plaintiff argues that Perry’s specified comment constitutes direct evidence of ageism and that summary disposition should not have been granted. We agree. Perry did not deny that he referred to plaintiffs age in relation to her ability to climb. Perry testified at his deposition that he said: “I believe [in] that conversation I might have said how are you going to climb when you’re 60 figuring that she might be 60 at that time. Just as a ballpark figure. And, you know, said, ‘Hopefully I’m not climbing when I’m 60.’ ”
*543 Perry admitted that he thought age was a relevant consideration due to the physicality of the job. Perry also admitted that plaintiff was qualified for the apprentice lineman position. Perry further testified that he “was suggesting if she [plaintiff] didn’t start learning to climb she [wa]sn’t going to be able to.” Plaintiff claims that she did not receive the training or hours she needed to advance in the apprentice lineman program because of her age, and she submitted evidence that she was given fewer hours of training than the male apprentice, Lewis. Plaintiff submitted Holmes’s deposition testimony that a meeting with Perry, Lewis, and plaintiff was held before her entry into the apprenticeship in which Perry was informed that plaintiff was to receive the same amount of training hours as Lewis. Perry’s deposition testimony included an admission that he did not begin to give plaintiff training hours until “two months or so” after she was given the apprentice lineman position. In sum, plaintiff presented sufficient direct evidence to preserve the material question of fact as to whether age was at least a motivating factor in Perry’s failure to offer plaintiff the required training.
Relevant to the same argument, we cannot conclude that Perry’s comment to plaintiff was a stray remark under Krohn v Sedgwick James of Mich, Inc, 244 Mich App 289, 292; 624 NW2d 212 (2001). In determining whether a comment is a stray remark, this Court considers:
(1) whether the alleged discriminatory remarks were made by the person who made the adverse employment decision or by an agent of the employer that was uninvolved in the challenged decision, (2) whether the alleged discriminatory remarks were isolated or part of a pattern of biased comments, (3) whether the alleged discriminatory remarks were made in close temporal proximity to *544 the challenged employment decision, and (4) whether the alleged discriminatory remarks were ambiguous or clearly reflective of discriminatory bias. [Dep’t of Civil Rights ex rel Burnside v Fashion Bug of Detroit, 473 Mich 863, 867; 702 NW2d 154 (2005).]
The remark in this case was made by plaintiffs direct supervisor who was responsible for providing plaintiff with training hours. The remark, although said only once, was not isolated given that Perry admitted that age was a relevant consideration in plaintiffs ability to climb. The remark was made while plaintiff was in training in the apprentice lineman program. Lastly, Perry’s remark was not ambiguous. He made a direct correlation between plaintiffs age and whether she could perform the required training.
Plaintiff also presented direct evidence that she was denied training and equipment and that she was assigned additional tasks because of her sex. “The proper recourse for conduct or communication that is gender-based, but not sexual in nature, is a sex-discrimination claim . . . .” Haynie v Dep’t of State Police, 468 Mich 302, 304 n 2; 664 NW2d 129 (2003).
Plaintiff is correct that Lewis received more hours of electrical training than she did for the period she worked as an apprentice lineman; specifically, she received 199.8 hours while Lewis received 407 hours during the same period. Plaintiff and Lewis were similarly situated. They were both apprentice linemen in the apprentice lineman program working toward the position of journeyman lineman, even though Lewis entered the program before plaintiff and had completed certain portions of the program before plaintiffs entry into the program. The program was made up of a series of steps; each step was completed by obtaining a certain number of electrical-training hours. It is true *545 that Lewis had already completed climbing school when plaintiff entered the program and had more hours than plaintiff; however, Holmes’s deposition testimony was that while plaintiff and Lewis might not be able to do the same type of tasks, “they could have equal hours in electric [toward certification]As mentioned earlier, Holmes held a meeting with Perry and others in December 2010 to direct that plaintiff receive equal hours. Holmes admitted, however, that she did not follow up to determine whether plaintiff was receiving equal hours.
The record supports a finding that the difference in hours was due to plaintiffs protected status as a female. Plaintiff submitted affidavits to support this claim. Specifically, Webb stated that plaintiff “did not receive the same training for other duties as the male employees were,” that “[c]urrent male employees disallowed [plaintiff] from operating the skid-steer, front-end loader and other machinery,” and that he believed she was treated in that manner “because of her gender.” Withrow stated that she had “personal knowledge that [plaintiff] was not provided with the same training as other male employees.” McNamara stated that he “ha[d] personal knowledge that [plaintiff] wanted to be trained to run the generator and that Mr. Perry refused to train her.” Adverse employment actions include diminished material responsibilities. Peña v Ingham Co Rd Comm, 255 Mich App 299, 312; 660 NW2d 351 (2003). Collectively, the affidavits provide evidence that plaintiff requested and male employees of defendant denied her training on specific machinery and that her direct supervisor Perry supported the refusal to train her.
Plaintiff also presented direct evidence that she was not provided with the proper equipment to perform her *546 job although male employees were provided with the proper equipment. Plaintiff presented Webb’s affidavit in support. Webb averred that plaintiff was not given the proper equipment to perform her job and that in the winter of 2012 to 2013, plaintiff did not receive “certain cold weather equipment” she requested until Webb twice requested that plaintiffs supervisor at the time, Eric Buckler, order it. Webb further averred that “male employees were not required to jump through the same hoops as [plaintiff] was.” This is competent evidence that plaintiff was treated differently from her male counterparts as it relates to, at least, cold weather gear. This Court has previously recognized that restricting a plaintiffs ability to do his or her job properly is an adverse employment action. See Chen, 284 Mich App at 202.
Additionally, plaintiff presented direct evidence that she was assigned to perform administrative tasks that male employees were not required to perform. Plaintiff submitted Holmes’s affidavit that acknowledged that plaintiff was asked on multiple occasions to fill in for administrative staff at the department of water and light. In further support of her claim, plaintiff provided Withrow’s affidavit stating that in February 2012, Withrow recommended to Holmes that a man who was recently hired as a meter reader be trained for clerk duties, like plaintiff had in the past, but Holmes said, “He’s a man.” Withrow further stated that Holmes hired two part-time women to perform the clerk duties “rather than train the man ... in the position.” Holmes vehemently denied telling Withrow that the new male meter reader would not be trained for clerk duties because “he’s a man.”
Contrary to the trial court’s ruling, the affidavits plaintiff presented are not conclusory. The evidence *547 presented in them is admissible and sufficient to survive summary disposition. Plaintiff has presented evidence that job-related duties and training were determined on the basis of gender. While naming the specific employees would have been preferable and more persuasive, it is not required. Plaintiff also presented evidence that she was not given proper equipment, again based on her gender. Viewing the evidence in the light most favorable to plaintiff, we conclude there is a genuine issue of fact about whether plaintiff was discriminated against on the basis of her sex. This evidence, “if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer’s actions.” Hazle, 464 Mich at 462 (quotation marks and citation omitted).
2. INDIRECT EVIDENCE OF SEX DISCRIMINATION
Plaintiff makes three claims of sex discrimination for which there is no direct evidence and for which she fails to establish a prima facie case.
“Michigan courts have recognized two basic theories for establishing a prima facie case of gender discrimination: showing intentional discrimination or proving disparate treatment.” Lytle, 458 Mich at 181 n 31. Plaintiffs three claims are that (1) she was treated differently in regard to working conditions, (2) she was treated differently in regard to overtime, and (3) she was intentionally harassed on the basis of her gender, which created a hostile working environment.
In support of her first claim, plaintiff alleged that defendant placed her in unsafe working conditions because of her sex. Her direct evidence of sex discrimination is attributable to Webb, who was not the supervisor or decision-maker for either of these actions. Again, when there is no direct evidence of sex discrimi *548 nation, a plaintiff must establish a prima facie case by showing that "she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man.” Marsh, 173 Mich App at 79.
Plaintiff, as a woman, was clearly a member of a protected class. As to plaintiffs unsafe working conditions claim, both parties agree that Perry ordered plaintiff to go up in a bucket with him at the Family Dollar Store where he was to disconnect a temporary service, but plaintiff refused to do so. Plaintiff testified that it was unsafe; Holmes testified that it was not. On another occasion, both parties agree that plaintiff was given a chainsaw, but she declined to practice using the chainsaw outside of the class. Again, plaintiff cited safety concerns, asserting that the class did not include hands-on training. Plaintiff stated that the failure to include such hands-on training made it unsafe for her to practice, but the defense witnesses disagreed. This factual dispute, however, does not defeat her claim. It is the fact that plaintiff failed to provide evidence of disparate treatment that is fatal to this claim. Plaintiff did not present evidence that the other apprentice lineman or journeyman linemen, all of whom were males, were not required to perform the same tasks.
Plaintiffs second claim is that defendant’s failure to provide her with the same amount of overtime as was provided to male employees is evidence of sex discrimination. In support of this assertion, plaintiff presented evidence showing that from January 2012 to March 2014 she received only 32 hours of overtime, while five other male employees received considerably more hours. Again, plaintiffs supervisor for these claims was not Webb. Plaintiff also claimed that Buckler, who was her supervisor, refused to call her for overtime. *549 Plaintiff offered a chart that demonstrated that several named male employees received more overtime than she did. To the contrary, Buckler testified that only qualified employees were called in for overtime when needed in a particular department. For example, one employee named on the chart, Richard Haley, a mechanic and a generator operator, had a total 1,016 overtime hours; Buckler explained that plaintiff was not qualified to perform the jobs that Haley did. Therefore, plaintiff and Haley were not similarly situated. We cannot guess or contrive arguments related to the other male employees plaintiff listed in the overtime chart. In toto, plaintiffs two claims for sex discrimination based on disparate treatment fail, and the trial court was correct to have granted summary disposition to defendant on those issues.
Plaintiffs third claim is that she was harassed in the workplace because of her sex and that the harassment created a hostile work environment. Plaintiff did not establish a prima facie case of hostile work environment based on sex discrimination, and the trial court did not legally err by granting summary disposition in favor of defendant on this claim.
Harassment based on any of the enumerated classifications in MCL 37.2202(l)(a) is an actionable offense. Downey v Charlevoix Co Bd of Co Rd Comm’rs, 227 Mich App 621, 626; 576 NW2d 712 (1998). To establish a prima facie case of hostile work environment based upon sex discrimination,[3] a plaintiff must prove:
*550 (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee’s employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [Id. at 629.]
“[Wjhether a hostile work environment was created by the unwelcome conduct [is] determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiffs employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment.” Quinto v Cross & Peters Co, 451 Mich 358, 369; 547 NW2d 314 (1996) (quotation marks and citation omitted). Conclusory allegations devoid of detail are not sufficient “[to] permit the conclusion that there was such conduct or communication of a type or severity that a reasonable person could find that a hostile work environment existed.” Id. at 371-372.
Plaintiff is clearly a member of a protected class because discrimination on the basis of sex is prohibited. MCL 37.2202(l)(a). Plaintiff set forth three examples of alleged sex discrimination. She claimed that she was subjected to communication, conduct, or unwelcome conduct on the basis of her protected status as a female and that this conduct created a hostile work environment. We reject each, concluding that they are insufficient to establish that the actions occurred because she is female.
*551 First, plaintiff alleged that defendant’s and its employees’ references to her as a “nuisance employee” is evidence of a hostile environment based on sex discrimination. Plaintiffs support for this claim is Webb’s affidavit, in which Webb stated that plaintiffs unequal treatment claims were “brushed aside” by Holmes and by Bill Glimes, superintendent of the department of water and light, and that those individuals referred to plaintiff as a “nuisance employee.” There is no record evidence that the asserted “nuisance employee” comment was based on plaintiffs status as a female, and a reasonable person could not reach that conclusion on the evidence submitted.
Second, plaintiff argued that defendant’s reference to her as a “bitch” constituted sex discrimination and is evidence of a hostile work environment. This claim is based on hearsay. Plaintiff claimed that Ryan McNamara, a generator operator/mechanic, told her when she was a meter reader that he heard “them” call her a bitch when she left her office area. While rude, a single remark made by unknown persons is not only inadmissible, it is also not of the severity to support a reasonable person’s conclusion that the remark created a hostile work environment.
Third, plaintiff testified that employees ignored her when she entered a room. She offered no remarks or admissible or circumstantial evidence on which a connection between her sex and the other employees’ behavior can be connected. Assuming the behavior did indeed happen, such behavior, while unkind and rude, does not rise to the level of a hostile work environment.
Because plaintiff is unable to prove that she was subjected to unwelcome communication or conduct based on her sex or that the alleged unwelcome conduct or communication was intended to, or in fact did, *552 create a hostile work environment, it is unnecessary for the Court to analyze the last element, respondeat superior.
IV. RETALIATION
Plaintiff last argues that defendant and defendant’s employees retaliated against her because she filed a charge with the EEOC, in which she alleged that she was discriminated against when she did not receive the apprentice lineman position, and that the trial court therefore erred by granting defendant’s motion for summary disposition under MCR 2.116(C)(10). We disagree.
A. STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision on a motion for summary disposition. Jimkoski, 282 Mich App at 4. Summary disposition under MCR 2.116(C)(10) is appropriate when “there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.”
B. ANALYSIS
The CRA prohibits persons from retaliating or discriminating “against a person because the person has opposed a violation of [the CRA], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [the CRA].” MCL 37.2701(a). “To establish a prima facie case of retaliation, a plaintiff must show: ‘(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the *553 plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.’ ” Garg, 472 Mich at 273 (quotation marks and citation omitted).
Applying the test, plaintiff clearly engaged in a protected activity in 2008 when she filed a charge of discrimination with the EEOC and in 2010 and 2011 when she complained to Holmes. In addition, because defendant was involved with the investigation and entered into a conciliation agreement with plaintiff in October 2010 regarding the apprentice lineman position, defendant knew of that protected activity. Plaintiff claims that the hostile work environment included (1) hostility from her supervisors, (2) being called a nuisance employee, and (3) being denied a clerk position with the water and light department, which constituted an employment action adverse to her. However, plaintiffs allegations are not sufficient to permit the conclusion that there was conduct or communication of a type or severity to support a reasonable person’s conclusion that a hostile work environment existed. Quinto, 451 Mich at 371-372.
With regard to the final employment action—that plaintiff was denied the clerk position at the department of water and light because Holmes added a testing requirement to retaliate for plaintiffs complaints—the record is devoid of any evidence that her failure to be awarded the position was the result of retaliation or discrimination. The clerk position was posted in July 2013, two years after plaintiffs complaints to Holmes. Holmes testified that the skills necessary for the position were verified by a basic clerical test and that such testing had been required for the position in the past. Plaintiff and another female union employee (Lori Stokes) applied for the *554 position. Although the other employee did not have as much seniority as plaintiff, plaintiff refused to take the test and was not hired for the position. The mere failure to obtain a position does not elevate defendant’s act to the level of a materially adverse employment action. Peña, 255 Mich App at 312. In addition, “there must be some objective basis for demonstrating that the change is adverse because a plaintiffs subjective impressions as to the desirability of one position over another [are] not controlling.” Id. at 311 (quotation marks and citations omitted; alteration in original).
Finally, because plaintiff failed to show that any of the three employment actions just discussed were adverse to her, it is unnecessary to determine whether there was a causal connection between the protected activity and the asserted adverse employment action.
V. CONCLUSION
We reverse the trial court’s order granting summary disposition to defendant under MCR 2.116(C)(7) with regard to the statute of limitations and under MCR 2.116(C)(10) with regard to plaintiffs age discrimination claim and sex discrimination claims related to training, equipment, and assigned tasks. We affirm the trial court’s order granting summary disposition to defendant under MCR 2.116(0(10) on plaintiffs claims of disparate treatment, hostile work environment, and retaliation. We remand for proceedings consistent with this opinion.
MARKEY, P.J., concurred with STEPHENS, J.

 The position of lineman involves installation and maintenance of overhead electrical lines, construction and repair of overhead wires, repair of street lights, setting and removal of telephone poles, and trimming trees with chainsaws.

 The trial court granted summary disposition of plaintiffs discrimination claims under both MCR 2.116(C)(8) (failure to state a claim) and (10) (no genuine issue of material fact). In deciding the motion, however, the trial court considered documentary evidence outside the pleadings, and it is therefore assumed that the motion was decided only under MCR 2.116(0(10). See Cuddington v United Health Servs, Inc, 298 Mich App 264, 270; 826 NW2d 519 (2012) (concluding that if a party moved for summary disposition under multiple subrules and the trial court ruled on the motion without specifying the subrule under which it decided an issue, and the court considered documentary evidence beyond the pleadings, this Court reviews the decision as if it were based on MCR 2.116(0(10)).

 Plaintiff’s hostile work environment claim is based on alleged discrimination based on sex, not on allegations of sexual harassment. In this case, we assume that a hostile environment claim may be maintained on the basis of conduct involving plaintiff’s gender. See Quinto v Cross & Peters Co, 451 Mich 358, 368 & n 6; 547 NW2d 314 (1996) (recognizing that “federal courts have held that harassing behavior based on ethnicity and age is violative of Title VII,” 42 USC 2000e et *550 seq., and “assum[ing] without deciding . .. that a hostile environment claim may be maintained on conduct involving a plaintiffs gender, age, or national origin”).