*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES LOCKLEAR,

      Plaintiff-Appellant,

v

OAKLAND SCHOOLS,

      Defendant-Appellee.

UNPUBLISHED
June 13, 2024

No. 363233
Oakland Circuit Court
LC No. 2021-186879-CD

Before: MURRAY, P.J., and RIORDAN and D. H. SAWYER*, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant on plaintiff's claims arising from the termination of his employment with defendant. Plaintiff argues that summary disposition of several of his claims was improper because genuine issues of material fact exist regarding (1) whether there was just cause to terminate his employment contract, (2) whether he was terminated in violation of the Whistleblowers' Protection Act (WPA), MCL 15.369 *et seq.*, and (3) whether he was terminated on the basis of his age in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.* We affirm.

## I. FACTS AND PROCEEDINGS

This case arises from plaintiff's termination from his position with defendant in February 2021. Defendant asserted that it had just cause to terminate plaintiff on the basis of plaintiff's disregard of safety rules and procedures implemented to protect against COVID-19 and plaintiff's provision of false information to the Oakland County Health Department (health department) during the contact-tracing process and to defendant during its subsequent investigation. Plaintiff filed suit, alleging claims of breach of contract, gross negligence, wrongful discharge in violation of the ELCRA, and retaliation in violation of the WPA. Defendant moved for summary disposition under MCR 2.116(C)(4), (7), [1] and (10), and the trial court granted the motion in full and dismissed plaintiff's complaint. On appeal, plaintiff challenges the trial court's dismissal of all of his claims,

---

[1] MCR 2.116(C)(4) and (7) applied to the gross negligence claim, which is not at issue on appeal.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

except the claim of gross negligence, specifically alleging that there are genuine issues of material fact that make summary disposition improper.

## II. JUST CAUSE

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition on his breach-of-contract claim because there is a question of fact regarding whether there was just cause to terminate his employment contract on the basis that he was untruthful with the health department or defendant or that he violated COVID-19 safety rules. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Relative Time Films, LLC v Covenant House Mich*, 344 Mich App 155, 161; 999 NW2d 64 (2022). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Relative Time Films*, 344 Mich App at 161-162 (quotation marks and citation omitted). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120.

There is no dispute that plaintiff's contract only permitted termination on the basis of just cause. The contract defines "just cause" as including "serious or repeated acts or omissions involving misconduct, insubordination, incompetence; and acts or omissions involving moral turpitude." The trial court found "no genuine issue of material fact that Plaintiff was untruthful when he stated that he was in his office all day alone on October 12, 2020 and this constitutes just cause under the employment agreement." Plaintiff does not dispute that such conduct would constitute just cause. Rather, he argues that there are questions of fact whether he actually made this statement to the health department or defendant. Plaintiff also argues that, although the trial court did not rule on these grounds, he did not make any false statements regarding "close contacts" that affected the contact-tracing process and there is a question of fact whether he disregarded COVID-19 safety rules.[2]

## A. FALSE STATEMENTS

Plaintiff contends that the trial court incorrectly found that he told a contact tracer that "he was in his office all day alone on October 12, 2020." This statement came from an e-mail sent from Kayleigh Blaney on October 16, 2020, in which she wrote: "He stated that no students are present and he did not have contact with any other staff, he was in his office alone all day on 10/12." In another e-mail in the chain, Blaney stated: "Per Charles, he was in his own office, alone, all day. He did not have any close contacts in the workplace."

---

[2] Although plaintiff asserts that just cause is a question for the jury to decide, he also acknowledges that he was required to establish a genuine issue of material fact in order to avoid summary disposition.

There is no dispute that, if plaintiff made this statement, it was false. Plaintiff's deposition testimony clearly established that he was not in his office alone all day on October 12, 2020. He admitted walking around the school and speaking with at least two employees. Plaintiff argues that there is a genuine issue of material fact regarding whether he made this statement given that the contact-tracing report does not include this statement. Rather, the report includes a comment from Marissa DiCicco, which provides: "10/16/2020: Spoke with Charles. Confirmed symptom onset 10/12, last day of work 10/12. No close contacts other than wife within 48 hours before symptom onset."

In his deposition, plaintiff admitted that he spoke to a contact tracer on October 16, 2020, and that the statement in the report was an accurate reflection of his conversation with the contact tracer, except that he did not recall whether he was asked about contacts in the previous 48 hours. Plaintiff contends that there is no evidence that he spoke with Blaney, but Blaney clearly attributes the statement in her e-mail to plaintiff. Plaintiff never testified that he did not speak with Blaney. In fact, he testified that he only had a vague recall of who he spoke to because he was not lucid during that time. The fact that he spoke with DiCicco and did not recall who else he spoke to does not establish that plaintiff did not speak with Blaney. Nor does plaintiff's testimony that the report was accurate establish that plaintiff did not make additional statements to DiCicco, which Blaney may have been summarizing. Plaintiff only recalled what was in the report. The report does not establish that plaintiff did not say that he was alone his office all day, and, as defendant contends, does not address plaintiff's activities on October 12, 2020. Rather, it appears to be a bottom-line conclusion, which is not inconsistent with the e-mail.

Further, there is additional evidence indicating that plaintiff did in fact say that he was in his office all day alone. Tywana Manzie testified that after she spoke with plaintiff on October 15, 2020, she called Stephanie Mattei. Mattei told Manzie that plaintiff "says that he was in his office the whole entire day and that he had talked to the epidemiologist and the epidemiologist said there was no need for anybody to quarantine." Manzie further clarified that plaintiff "told Stephanie Mattei he was in his office the entire day." Accordingly, plaintiff fails to establish a genuine issue of material fact regarding whether he made the false statement to the epidemiologist that he was alone in his office all day on October 12, 2020.

Plaintiff also denies that he made this false statement during his interview. Defendant relied on the affidavits of members of defendant's Board of Trustees (the board) to support its assertion that plaintiff told the same story to defendant. It also relied on the audio recording of plaintiff's interview. In the portion of the audio recording relied on by defendant, plaintiff stated that he did not have close contacts that day, but he did not recall what he did that day. He stated that he typically sat in on Zoom classrooms. He only recalled speaking with an epidemiologist by phone. When specifically asked about the statement in the report that plaintiff said he had no close contacts, and whether it was consistent with plaintiff saying that he was alone in his office all day, plaintiff agreed that that may have been close to what he said. Thus, plaintiff at least implied during his interview that he was alone in his office all day.

Plaintiff also argues that, although the trial court did not rule on this basis, he did not falsely tell the health department that he had no close contacts on October 12, 2020, because he was not in "close contact" with any employees. The evidence presented establishes a question of fact regarding whether plaintiff had close contacts on October 12, 2020. Plaintiff denied that he had

close contacts, but at least one employee reported otherwise. Nonetheless, with regard to plaintiff stating that he had no close contacts in the 48 hours before the onset of his symptoms, there is no question of fact that this was false. Defendant provided text messages showing that plaintiff was in close contact with his daughter and her family the day before and that he did not tell the health department. On appeal, plaintiff claims there is a question of fact because he testified that he did not recall making this statement to the contact tracer and because this purported failure to disclose did not affect the contact-tracing process. However, plaintiff's lack of memory is not sufficient to create a question of fact regarding the contents of the contact-tracing report. Furthermore, plaintiff fails to establish that the contact-tracing process was limited to defendant's employees and, thus, that his failure report his contact with his family did not affect the contact-tracing process. Accordingly, there is also no genuine issue of material fact that plaintiff made false statements to the health department about having no close contacts in the 48 hours before the onset of his symptoms.

## B. DISREGARD OF COVID-19 SAFETY RULES

As plaintiff acknowledges, the board also concluded that plaintiff disregarded COVID-19 safety rules by working in the office on October 12, 2020, despite visible symptoms. The trial court did not address this basis and there appears to be a genuine issue of material fact regarding whether plaintiff was experiencing symptoms while he was at work on October 12, 2020. Plaintiff expressly denied having any symptoms until after dinner on October 12, 2020, whereas other employees testified that plaintiff was visibly sick at work that day. Nonetheless, because there was no genuine issue of material fact that just cause existed on other grounds, the trial court properly dismissed plaintiff's breach-of-contract claim.

## III. WPA

Plaintiff next argues that there are genuine issues of material fact regarding whether he was terminated in violation of the WPA and, in particular, whether he was engaged in a protected activity and whether the existence of a causal connection between the protected activity and the discharge existed. We disagree.

"To establish a prima facie case under . . . [§ 2 of the WPA, MCL 15.362], a plaintiff must show that (1) the plaintiff was engaged in a protected activity as defined by the WPA, (2) the plaintiff was discharged, and (3) a causal connection existed between the protected activity and the discharge." *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016) (quotation marks and citation omitted). " 'Protected activity' under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule; (2) being about to report such a violation to a public body; or (3) being asked by a public body to participate in an investigation." *Id*. (quotation marks and citation omitted).

Plaintiff argues that he engaged in protected activity by raising concerns about defendant's decision to require in-person work and its improper handling of the COVID-19 outbreak. Plaintiff claims that he expressed concern to his supervisor, Jarrad Grandy, and to others during and after

his interviews.  The trial court found that plaintiff failed to explain how his activities constituted protected activity in his response to the motion for summary disposition.  Because plaintiff failed to respond to defendant's argument, this issue is waived and need not be considered.  See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-3.

Nonetheless, plaintiff's claim fails.  Plaintiff identified three sources of alleged protected activities—(1) his reports of employees with COVID-19 symptoms and positives tests to Grandy, (2) his comments to outside counsel, Gary Reeves, during the investigation, and (3) an e-mail from his attorney and son-in-law, Gregory Yatooma.  Regarding plaintiff's reports to Grandy, plaintiff admitted that he did not know what specific rules were being violated.  However, even if plaintiff's reports to Grandy constituted protected activity, plaintiff cannot establish causation.  Grandy was not a decision-maker and there is no evidence that the board knew of plaintiff's complaints to Grandy.

With regard to alleged reports during plaintiff's interviews, plaintiff admitted that he did not say anything during the interviews that could be considered reporting a violation of an order, rule, or regulation.  He also admitted that this theory, as well as his theory regarding the e-mail from Yatooma, were "[j]ust speculation."  Plaintiff claimed that the focus of the investigation changed after his statements to Reeves and the e-mail from Yatooma.  Assistant Superintendent Dandridge Floyd testified, however, that the focus of the investigation evolved "pretty organically" on the basis of the competing statements obtained.  Further, even if the board was in possession of that e-mail, there is no evidence that it based its decision on the e-mail.[3]  Thus, even if these actions constituted protected activity, plaintiff failed to establish the requisite causal connection.  Accordingly, the trial court properly dismissed plaintiff's WPA claim.

# IV.  ELCRA

Lastly, plaintiff argues that there is a genuine issue of material fact regarding whether he was terminated because of his age in violation of the ELCRA.  We disagree.

When there is no direct evidence of discrimination, "a plaintiff must establish a prima facie case of age discrimination by proving that "(1) [he or] she was a member of the protected class, (2) [he or] she suffered an adverse employment action, (3) [he or] she was qualified for the position, and (4) [he or] she was replaced by a younger person." *Major v Village of Newberry*, 316 Mich App 527, 540-541; 892 NW2d 402 (2016) (quotation marks and citation omitted).  "If a plaintiff establishes a prima facie case of discrimination based on . . . age . . . , the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment

---

[3] We note that defendant also argues that plaintiff cannot show that the e-mail from Yatooma was a report "made in good faith" because both plaintiff and Yatooma refused to answer questions about the e-mail during their depositions.  It is not necessary to reach this issue given that plaintiff cannot establish a causal connection between the e-mail and his discharge.

action taken." *Id*. at 541. "To prevail on the claim, a plaintiff must then present evidence that the explanation provided by his or her employer constituted a pretext for discrimination." *Id*. at 542.

> A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Id*. (citation omitted).]

A plaintiff must also "establish a causal link between the discriminatory animus and the adverse employment decision." *Id*. (quotation marks and citation omitted).

The trial court found that this issue was abandoned because plaintiff did not rebut defendant's argument regarding pretext. We disagree. In his response to defendant's motion for summary disposition, plaintiff addressed pretext in a footnote, arguing that defendant "simply presumes without support that its stated justification for Locklear's termination was accurate, though it was not, and presumes that the Board harbored no age-based animus towards Locklear. In fact, the salary study involved "everyone" and thus the Board must have been aware that Locklear's pay was the highest among the deans as result of his length of tenure which directly correlates to his age."

Nonetheless, plaintiff fails to establish pretext. Plaintiff argues that there were significant questions of fact regarding pretext and that he believed his age was a factor on the basis of comments made by Grandy and a compensation study that revealed that plaintiff was overpaid and the highest paid dean. Plaintiff fails to show that the board's reasons for terminating him had no basis in fact. As discussed previously, there is no genuine issue of material fact that plaintiff was untruthful with the health department and defendant. Nor can plaintiff show that the stated reasons were not the actual factors motivating the decision or were insufficient to justify the decision.

In addition, plaintiff cannot establish causation. Plaintiff testified that he believed that his termination "might" have related to his age because he was the oldest dean, which Grandy often mentioned. Grandy and "others" made comments such as plaintiff was "the old guy," but plaintiff could not recall any specific person other than Grandy making such comments. Those comments made plaintiff "speculate" that his age was a reason for his termination. Again, however, Grandy was not the decision-maker, there is no evidence that the board as aware of such comments, and the board members averred that plaintiff's age was not a factor in their decision.

Plaintiff also believed his age was a factor because he was the highest paid dean, which was revealed in a 2019 compensation study conducted by Floyd. However, there is no evidence that the board, even if aware of the study, based its decision to terminate plaintiff on the study. Because plaintiff failed to establish a genuine issue of material fact regarding pretext and causation, the trial court properly dismissed plaintiff's age-discrimination claim.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ David H. Sawyer

-6-