*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH KUILEMA,

Plaintiff-Appellee,

UNPUBLISHED
July 11, 2025
2:27 PM

v

No. 367310
Kent Circuit Court
LC No. 23-003561-CZ

CALVIN UNIVERSITY,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

RICK, J. (*concurring in part and dissenting in part*).

I agree with the majority's conclusion that plaintiff, Joseph Kuilema, properly alleged a retaliatory discrimination claim sufficient to survive summary disposition under MCR 2.116(C)(8). I write only to express my disagreement with the majority's conclusion that Kuilema's claim of sex-based associational discrimination had no merit. I would affirm the trial court's denial of summary disposition of Kuilema's associational discrimination claim and remand for further proceedings.

The majority's recitation of the facts at issue here is accurate; thus, I will not reiterate what has already been stated regarding the circumstances leading to Kuilema's termination. However, as stated, I respectfully disagree with the majority's analysis of Kuilema's associational discrimination claim. The majority found that Kuilema did not allege a legally sufficient claim for discrimination on the basis of sex under the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. The majority reasoned that, following the but-for causation test in *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 420; 987 NW2d 501 (2022), the discriminatory action would have occurred *regardless* of Kuilema's sex.[1]

---

[1] The plain language of the ELCRA does not define the term "sex." *Rouch World, LLC*, 510 Mich at 421. However, "[d]iscrimination on the basis of sexual orientation necessarily constitutes discrimination because of sex." *Id*. at 433. Following our Supreme Court's ruling in *Rouch World*,

-1-

In general, sex-based discrimination claims may be proven by "direct evidence or by indirect or circumstantial evidence." *Major v Village of Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016) (quotation marks and citation omitted). Direct evidence is defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. If no direct evidence exists, "a plaintiff must establish a prima facie case by proving that she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man." *Id*. at 541 (quotation marks and citation omitted). But in any event, "[a]ll that is required to state a claim of retaliation under the ELCRA are allegations that (1) the defendant took an adverse action against the plaintiff and (2) there is a causal link between the adverse action and a protected act." *Miller v Dep't of Corrections*, 513 Mich 125, 134; 15 NW3d 129 (2024).

In its decision to deny Calvin University's motion for summary disposition of Kuilema's associational discrimination claim, the trial court relied on *Bryant v Automatic Data Processing, Inc*, 151 Mich App 424; 390 NW2d 732 (1986), and *Graham v Ford*, 237 Mich App 670; 604 NW2d 713 (1999). The plaintiff in *Bryant* argued that she was discriminated against by her employer because she was a white female married to a black male. *Bryant*, 151 Mich App at 428. The defendant employer contended that she had not brought a cognizable claim for discrimination because her claim was grounded solely upon the racial identity of her spouse, rather than her *own* racial identity. *Id*. The *Bryant* Court disagreed, reasoning that the purpose of the ELCRA "is to prevent discrimination against persons based on their membership in a certain class and 'to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.' " *Id*. at 430, quoting *Miller v C A Muer Corp*, 420 Mich 355, 363; 362 NW2d 650 (1984). Similarly, in *Graham*, 237 Mich App at 675-676, the plaintiffs, who were black, alleged discrimination in violation of ELCRA on the basis of their race and their association with white coworkers. Applying the reasoning from *Bryant*, the *Graham* Court concluded that the defendant had a "discriminatory predisposition and animus toward plaintiffs based on race and race association." *Graham*, 237 Mich App at 678. In both cases, the claims were brought not because of the *litigants'* races, but the races of the persons *with whom they associated*. See *Bryant*, 151 Mich App at 428; *Graham*, 237 Mich App at 675-676.

The majority would not extend the reasoning set forth in *Bryant* and *Graham* to sex-based associational discrimination claims. Instead, the majority relies on *Rouch World* in order to conclude that Kuilema was not discriminated against because of his sex. As the majority points out, the *Rouch World* Court explained that "[t]he ELCRA's prohibition of sex discrimination requires a determination whether a specific individual was treated worse than a member of the opposite sex would have been; it does not ask how one sex-based group is treated compared to another sex-based group." *Rouch World*, 510 Mich at 428. Thus, the majority reasons that, under *Rouch World*, the key question here is whether Kuilema was discriminated against based on his or her own sexual identity.

---

our Legislature amended the ELCRA to include sexual orientation as a protected class. See 2023 PA 6.

Contextually, when the *Rouch World* Court opined that sex-based discrimination occurs on an individual level, rather than a group level, it was attempting to explain the notion that "it [is not] a defense for an employer to say it discriminates against both men and women because of sex." *Bostock v Clayton Co*, 590 US 644, 659; 140 S Ct 1731; 207 L Ed 2d 218 (2020). To add to the analogy, our Supreme Court explained that, "[w]ere a business to discriminate against both a homosexual male and a homosexual female, the business would be subject to liability under the ELCRA for both because in both cases the business discriminated against the individual for traits it otherwise would have tolerated in a different sex." *Rouch World*, 510 Mich at 429. At no point in its analysis did the *Rouch World* Court eliminate associational discrimination claims as a concept, or state that a discrimination claim could not lie based on association with members of the LGBTQIA+ community.

In order to reach its conclusion, the majority overlooks that *Rouch World* is not squarely on point with regard to the associational discrimination claim at issue here. In *Rouch World*, the plaintiffs in the consolidated cases at issue were discriminated against based on their individual identities, rather than their association with members of a protected class. *Id*. at 407. Thus, the ruling in *Rouch World* does not contemplate or address a factual scenario in which discrimination occurs on the basis of one's association with individuals identifying as members of the LGBTQIA+ community. By relying heavily on *Rouch World*, the majority neglects to address whether associational discrimination claims can exist separately from discrimination claims based on individual identity. I am of the opinion that they can and do. In *Graham*, for example, this Court explained:

> We are satisfied that the record in this case provides sufficient evidence of defendant Ford's discriminatory predisposition and animus toward plaintiffs based on race and *race association*; plaintiffs presented evidence that defendant Ford based job assignments and promotions on race, made racial comments to and statements about plaintiffs and other subordinates, and regarded the Black plaintiffs unfavorably because of their working relationships with white corrections employees. [*Graham*, 237 Mich App at 678 (emphasis added).]

Thus, the plaintiffs' claim that they were discriminated against based on their association with white employees was separate from their claim that they were discriminated against based on their own racial identities. Kuilema's discrimination claim is solely based on his decision to associate with members of a protected class. It is not based on *his* sexual identity at all. Under an associational-discrimination theory, his claim should survive summary disposition, as was the case in *Graham* and *Bryant*.

Were this Court to conclude that a claim of associational discrimination could only survive if the claimant brought an additional claim based on his or her own identity as a member of a protected class, the entire concept of "associational discrimination" would be utterly meaningless. The majority does not specifically address this issue, but its decision to reverse the trial court's ruling on Kuilema's associational discrimination claim essentially suggests that no associational discrimination claim can survive unless it is brought in tandem with a discrimination claim based on one's own identity. I do not believe that is what the ELCRA stands for, and thus, I cannot join with the majority's ruling on this issue.

Instead, it is my opinion that the trial court correctly applied *Bryant* and *Graham* to this matter. The ELCRA has been interpreted to extend to racial association, and a review of published Michigan caselaw indicates that there are no cases addressing sex-based associational discrimination claims. I thus conclude the same logic in *Bryant* and *Graham* applies here vis-à-vis sexual discrimination. I also submit this view is consistent with *Rouch World*. Under the facts set forth in *Bryant* and *Graham*, if a black woman had married a black man, or white employees had associated with other white employees, no discrimination claim would have arisen. The same could be said if the roles were reversed and a white woman had married a white man, or black employees associated with black employees. Here, although *Kuilema's* sex did not matter for ELCRA purposes, this incident would not have arisen if his former student's sexual identity was not in question. The marriage would have been considered heterosexual and no claim for discrimination would have arisen.

Taking the but-for test from *Rouch World* and the concept of associational discrimination together, as we must, the question we are required to answer is not whether Kuilema was discriminated against "because of" his sex, but whether Calvin University would have terminated Kuilema's employment if he had decided to officiate a heterosexual wedding. This claim was brought under MCR 2.116(C)(8), and thus, we may only look to the pleadings to determine whether Kuilema's claim should fail. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). On the basis of the pleadings here, I would find that Kuilema presented a cognizable claim of associational discrimination under the ELCRA because he would not have been terminated had he elected to officiate a heterosexual wedding. The trial court thus did not err in denying summary disposition of Kuilema's associational discrimination claim. Accordingly, I would affirm the trial court's order in its entirety and remand for further proceedings.

/s/ Michelle M. Rick