*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEGGY DAVY,

      Plaintiff-Appellant,

v

HUMAN DEVELOPMENT COMMISSION,

      Defendant-Appellee.

UNPUBLISHED
April 6, 2023

No. 362241
Tuscola Circuit Court
LC No. 2021-031715-CD

Before: CAMERON, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

In this wrongful termination action, plaintiff appeals as of right the trial court order granting summary disposition to defendant under MCR 2.116(C)(10). Plaintiff argues that the trial court erred when it held that there was no genuine issue of material fact regarding her claim of age discrimination. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 60 years old at the time she filed her complaint, was first hired by defendant in 1990. During her tenure, she held multiple leadership positions. She was named the mediation program director in or around 1994, and placed in charge of the domestic violence program in 2008. The number of mediations performed by the program declined under her leadership, and the State Court Administrative Office discontinued funding for the mediation program in 2013. The domestic violence program was plaintiff's only responsibility until 2016, when she was also put in charge of supervising the senior service specialists of the senior services program. After plaintiff became involved in that program, the number of individuals served decreased. The senior services program was removed from plaintiff's responsibility in 2020, and, once again, plaintiff's only responsibility was the domestic violence program.

In a meeting on September 23, 2020, plaintiff was informed that Lori Offenbecher, defendant's executive director, would no longer be her direct supervisor because she needed to delegate some of her workload in the wake of the COVID-19 pandemic. Instead, Kristen Misener, defendant's program development coordinator, would be plaintiff's direct supervisor. Misener was in charge of the elder abuse program, and there had been discussions about combining the

elder abuse and domestic violence programs. Misener was younger than plaintiff. Misener was instructed to review the domestic violence program to see how services could be improved. When asked by plaintiff during that meeting, Offenbecher denied that the change was because of plaintiff's performance and assured plaintiff that she would be working with Misener to implement changes to the program. However, Offenbecher later testified that she had actually come to believe that plaintiff had a practice of putting in barriers to prevent people from receiving defendant's services, but, because she did not have "hard facts" to support that claim, she denied that the change was related to plaintiff's performance. During that meeting, Offenbecher stated that plaintiff had been there a while, and it would be nice to have "new younger eyes" look at the program to determine what defendant could be doing better.

During her review of the program, Misener removed plaintiff's supervisory responsibilities. Misener wanted to see how the employees would do on their own because they relied on plaintiff too heavily and saw her as a mother. When plaintiff went to Offenbecher to report her concerns about this, Offenbecher stated that Misener was plaintiff's supervisor and had the authority to take away her supervisory responsibilities.

After Misener's assessment of the domestic violence program was complete, she recommended that plaintiff's position be eliminated. Offenbecher decided that it was in the best interest of the agency to lay off plaintiff, eliminate plaintiff's position, and have Misener absorb plaintiff's responsibilities. Offenbecher testified that eliminating plaintiff's position saved defendant money because Misener took over plaintiff's responsibilities without receiving additional compensation. There were also concerns about the quality of the domestic violence program under plaintiff's leadership. Misener's review of the domestic violence program revealed that plaintiff was not adhering to defendant's empowerment philosophy. Defendant emphasized implementing trauma-informed policies, which the Michigan Domestic and Sexual Violence Prevention and Treatment Board also favored, and had asked defendant to implement in an action plan created in 2017. Trauma-informed policies put the power and control back in the hands of victims of abuse. Instead of giving clients a sense of power and control, plaintiff imposed strict curfews and locked all the client's medications in a safe. Plaintiff admitted the number of clients staying the night at the center had decreased since she took over the program, that one of defendant's goals was to have the number of people staying at the center increase, and that individuals expressed concerns about how few people were staying at the center. Plaintiff was also in charge of advertising the center and making sure community partners knew about it. However, the center was not well-known in the community or marketed well. This was brought to plaintiff's attention in her 2019 and 2020 performance reviews, but not corrected.

Plaintiff was laid off on February 11, 2021, and her employment was terminated six months later, in August 2021. Plaintiff admitted that she knew defendant's policy was to terminate the employment of anyone who had been laid off for six months, she was told to apply for jobs with defendant on Indeed, and she did not apply for (or even look at) the jobs posted by defendant. Plaintiff denied that there were any comments made about her age when she was laid off, and there is no evidence that comments about plaintiff's age were made when she was terminated.

Plaintiff filed suit against defendant, alleging age discrimination in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. Defendant moved for summary disposition under MCR 2.116(C)(10), alleging there was no genuine issue of material fact that

plaintiff could not provide direct or indirect evidence of age discrimination. The trial court agreed, reasoning that defendant provided legitimate, nondiscriminatory reasons for its decisions, and plaintiff could not show that those reasons were pretext or that she was laid off and then terminated because of her age.

## II. ANALYSIS

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because there is a genuine issue of material fact regarding whether plaintiff was laid off or terminated as a result of age discrimination. We disagree.

### A. STANDARD OF REVIEW

This Court reviews "de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id*. at 160. A motion under MCR 2.116(C)(10) "may only be granted when there is no genuine issue of material fact." *Id*. A genuine issue of material fact occurs when "the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). When considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*.

### B. ADMISSIBILITY OF EVIDENCE

As a preliminary matter, plaintiff argues that certain evidence presented by defendant to the trial court was inadmissible and could not be considered. We disagree.

MCR 2.116(G)(3)(b) states that "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)." MCR 2.116(G)(6) states that evidence will "only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." Plaintiff claims that defendant cannot use the affidavits of Kathy Jaster or Anna McVay, defendant's employees, to support its motion because defendant did not disclose those witnesses. MCR 2.313(C)(1) states that a party who fails to identify a witness is not allowed to use that witness to provide evidence on a motion, "unless the failure was substantially justified or is harmless." However, Jaster and McVay were both listed by name on defendant's preliminary witness list. Therefore, both affidavits are admissible.

Plaintiff also claims that the charts and summaries provided by defendant regarding the number of nights spent at the center and the jobs posted by defendant on Indeed are inadmissible because defendant did not produce the underlying source material. MRE 1006 states that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." This is true as long as the source material, is "made available for examination or copying, or both, by other parties at [a] reasonable time and place." *Id*.

Plaintiff does not allege that defendant declined to provide her with the source material after she requested it. Instead, plaintiff argues that, because defendant did not actively give her the underlying source material, the summaries are inadmissible. This claim was made after the charts and summaries were relied on during plaintiff's deposition. Plaintiff did not object to the use of the charts and summaries, or ask for the source material, during the deposition. Plaintiff did not ask for the source material after the deposition. Plaintiff did not ask to see the source material until after defendant moved for summary disposition, which defendant then provided. MRE 1006 does not state that a party has to go out of its way to provide the underlying source material; rather, the source material shall be made available at a reasonable time and place. There is no evidence to suggest that defendant refused to make the source material available for examination or copying at a reasonable time and place.[1]

Plaintiff also alleges that Offenbecher's affidavit contains "inadmissible hearsay." Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In her affidavit, Offenbecher relayed some of what Misener told Offenbecher after the investigation. This evidence can be relevant for the purposes of ascertaining Offenbecher's state of mind at the time the adverse employment actions were taken, not for the truth of the matter asserted. In other words, what Misener told Offenbecher speaks to Offenbecher's beliefs about plaintiff's performance at the time plaintiff was laid off and can be used to show why Offenbecher laid off plaintiff. The truth of the statements is not necessarily relevant. Therefore, it is not inherently inadmissible hearsay. In addition, Offenbecher's affidavit did not present evidence that Misener did not directly testify about at her deposition. Statements made by the Michigan Domestic and Sexual Violence Prevention and Treatment Board regarding problem areas in the program or opportunities for improvement were offered by defendant to prove that opportunities for growth were identified by the board, not for the truth of the matter asserted. The fact that the board made suggestions is what is relevant. Therefore, these comments are also not inherently hearsay.

## C. AGE DISCRIMINATION

Plaintiff brought this action under the ELCRA, claiming that she was discriminated against because of her age. MCL 37.2102(1) states that

> [t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

---

[1] Regardless, plaintiff admitted that the total nights spent at the center were down while she was running the program, and that the total nights spent at the center went up when she was laid off. Therefore, the actual charts need not be looked at to reach that conclusion. Plaintiff also admitted that she did not even look to see if defendant posted jobs on Indeed, so the actual jobs posted are not relevant.

-4-

A plaintiff may establish that he or she was the victim of age discrimination by presenting either direct or indirect evidence. *Major v Village of Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016). In either scenario, the plaintiff must show that there was a causal link between the adverse employment action he or she was subject to and discriminatory animus. *Id*. at 542.

"Direct evidence, in the context of a [Civil Rights Act] claim, is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 540 (quotation marks and citation omitted). Plaintiff argues that Offenbecher's comment that it would be "nice to have new younger eyes" look at the program constitutes direct evidence of unlawful age discrimination. Offenbecher made that comment in the September 23, 2020 meeting about Misener being appointed as plaintiff's new direct supervisor and Misener reviewing the domestic violence program to see how it could be improved. Sometime after that meeting, Misener removed plaintiff's supervisory responsibilities. The evidence does not suggest that Offenbecher planned for Misener to take away plaintiff's supervisory responsibilities, or that Offenbecher was planning to lay off or terminate plaintiff, at the time the September 23, 2020 meeting was held. When plaintiff went to Offenbecher to express her concerns about her supervisory responsibilities being taken away, Offenbecher stated that Misener had the authority to do so as plaintiff's supervisor. In her complaint, plaintiff did not claim that Misener being appointed her supervisor, the review of the domestic violence program, or having her supervisory responsibilities taken away, were adverse employment actions taken against her. Instead, plaintiff only claimed that being laid off and terminated were the adverse employment actions.

Plaintiff was not laid off until February 11, 2021, and was not terminated until August 2021. Offenbecher's comment that it would be nice to have "new younger eyes" look at the program was made months before plaintiff was laid off, in support of the decision to have Misener review the program. The comment did not imply that plaintiff was incapable because of her age or refer to plaintiff at all. Offenbecher expressing that it would be nice to have Misener review the program because she has "new younger eyes" is not direct evidence that Offenbecher laid off or terminated plaintiff months later because of her age. Offenbecher's comment does not require the conclusion that unlawful discrimination was at least a motivating factor in laying off or terminating plaintiff, which only occurred after Misener completed her review of the domestic violence program.

When there is no direct evidence of discrimination, a plaintiff must establish a prima facie case of discrimination through indirect evidence. *Major*, 316 Mich App at 540. See also *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed 2d 668 (1973). A plaintiff may do so by proving that (1) he or she was a member of a protected class, (2) he or she suffered an adverse employment action, (3) he or she was qualified for the position, and (4) he or she was replaced by a younger individual. *Major*, 316 Mich App at 540-541. Here, it is undisputed that plaintiff is a member of a protected class because of her age (she was 60 years old), that she was laid off and eventually terminated, that she was qualified for her position, and that Misener (who was younger than plaintiff) took over her responsibilities after she was laid off.

When a plaintiff establishes a prima facie case of age discrimination, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Id*. at 541. A defendant cannot meet its burden simply by filing an answer or relying

on its counsel's arguments; "[t]he articulation requirement means that defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Hazle v Ford Motor Co*, 464 Mich 456, 464-465; 628 NW2d 515 (2001). "Once the employer produces evidence of a nondiscriminatory reason for the discharge, even if that reason later turns out to be incredible, the presumption of discrimination evaporates." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997).

Defendant articulated multiple legitimate, nondiscriminatory reasons for its actions. Plaintiff argues that Offenbecher admitted that she did not have a factual basis for laying off or terminating defendant. This is not supported by the evidence. Offenbecher stated that she believed, after years of supervising plaintiff, that plaintiff had a pattern of creating barriers to people receiving services, but that, before Misener's investigation, she did not have "hard facts" to prove it. Offenbecher never stated that she did not have a factual basis for laying off plaintiff or terminating her employment after Misener's investigation was completed.

The most obvious reason why plaintiff was laid off was because the agency saved money by doing so. Misener was able to take over plaintiff's responsibilities without an increase in pay. Offenbecher explained that it made financial sense to eliminate plaintiff's position, combining the domestic violence services program and elder abuse program under Misener.

There is also evidence that the domestic violence program was not doing as well as it could be under plaintiff's leadership. Plaintiff admitted that the total number of clients spending the night at the center decreased while she was running the program, and that the total nights spent at the center increased when she was no longer in charge. Plaintiff argues that there could have been outside factors influencing these numbers, such as how the beds were counted, or changes in the demand for beds. Plaintiff did not provide any evidence to support her claim that the demand for beds changed. She did explain that the way beds were counted at the center changed shortly before she left. Beds that were empty but reserved for children started to be counted just before she left; those beds were not counted before. However, any change in how the beds were counted after plaintiff was laid off is irrelevant. It is undisputed that the average number of people in the center decreased significantly while plaintiff was in charge. These statistics put defendant's funding for the domestic violence program at risk.

Furthermore, it was part of plaintiff's job responsibilities to advertise the domestic violence program, and the program was not marketed or well-known by the community. Plaintiff was told in her 2019 and 2020 performance reviews that she needed to do a better job advertising and promoting the program, but numbers continued to decrease. When Misener conducted her review, she discovered that community presentations were being done at the bare minimum. In addition, there was reason for defendant to believe plaintiff was actively looking for reasons to deny individuals services. Each time plaintiff was placed in a new program, the number of people served in that program decreased. Plaintiff's former employees told Misener that plaintiff looked for ways to exclude people. She denied services to wheelchair bound individuals (despite the facility being handicap accessible), she denied services to individuals who were homeless as a result of domestic abuse, and she denied services to addicts not currently using. Furthermore, there was evidence that plaintiff was not following the trauma-informed approach defendant wanted to promote. Plaintiff took power away from victims of abuse by imposing strict curfews and keeping their medications locked in a safe. Plaintiff continued these practices even after the Michigan

Domestic and Sexual Violence Prevention and Treatment Board conducted a quality assurance review in 2017, and suggested that these practices stop in an action plan it created. All of these reasons are legitimate business reasons to lay off plaintiff.

Defendant also had a legitimate business reason to terminate plaintiff's employment. It is defendant's policy to terminate employees after they have been laid off for six months, and it is up to the employee to apply for a different position. Plaintiff knew about that policy before her employment was terminated. She admitted that she did not apply for any jobs with defendant after she was laid off, or even look at the jobs defendant listed on Indeed.

Once a defendant articulates legitimate, nondiscriminatory reasons for taking adverse actions against the plaintiff, the burden shifts again, and the plaintiff must present evidence showing "the explanation provided by his or her employer constituted a pretext for discrimination." *Major*, 316 Mich App at 542. Disproving the defendant's articulated reasons is not enough, however, and the plaintiff must prove that there is "a triable issue that discriminatory animus was a motivating factor." *Lytle v Malady*, 458 Mich 153, 175; 579 NW2d 906 (1998). Stated differently, in order to survive summary disposition, plaintiff must show that the evidence, when viewed in a light most favorable to plaintiff, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. at 176. A plaintiff can establish that a reason given was pretext by showing that the reasons put forth by the defendant were not based in fact, by showing that the reasons were not the actual motivating factors behind the decision, or by showing that the reasons, taken together, were insufficient to justify the adverse employment action taken. *Major*, 316 Mich App at 542.

Plaintiff argues that defendant provided inconsistent explanations for plaintiff's lay off and termination. Offenbecher told plaintiff that Misener was not appointed as plaintiff's supervisor because of plaintiff's performance. Plaintiff argues that this is inconsistent with defendant's later claim that plaintiff was laid off for her performance. These explanations are not inconsistent. Offenbecher was given new information about plaintiff's performance after Misener finished her review of the domestic violence program. In addition, Offenbecher testified that she had concerns about plaintiff's performance before Misener was appointed as plaintiff's supervisor, but she did not share those concerns with plaintiff because she did not have hard facts to support her concerns at that time.

Plaintiff further argues that remarks made by defendant's employees about plaintiff's age, or age in general, show that age was a determining factor in laying off plaintiff and terminating her employment. Plaintiff admitted that her age was not mentioned in the meeting at which she was laid off. Plaintiff did not claim that her age was mentioned in the letter informing her that she was terminated. As discussed earlier, Offenbecher, who made the decision to lay off plaintiff, made a remark months before plaintiff was laid off that it would be nice to have "new younger eyes" look at the program. Plaintiff also alleged that within the last 10 years, Offenbecher made comments in the lunch room about plaintiff being older than her. Factual comments were made about older employees costing more money to insure before March 2020. Misener made comments about Offenbecher (not plaintiff) getting close to retirement age. Misener also made a comment about the younger generation being more flexible with their work hours. Finally,

Misener commented that other employees saw plaintiff as their mother because they were very close with plaintiff. No other comments about plaintiff's age were reported.

A "stray remark" is explained as follows:

> Statements that are made outside the immediate adverse action context, generally referred to as "stray remarks," and that the plaintiff alleges to be direct evidence of bias, must be examined for relevancy using the following four factors: (1) Were the disputed remarks made by the decisionmaker or by an agent of the employer uninvolved in the challenged decision? (2) Were the disputed remarks isolated or part of a pattern of biased comments? (3) Were the disputed remarks made close in time or remote from the challenged decision? (4) Were the disputed remarks ambiguous or clearly reflective of discriminatory bias? [*Shaw v Ecorse*, 283 Mich App 1, 25; 770 NW2d 31 (2009) (quotation marks and citation omitted).]

The remarks in this case were isolated, occurring over the course of months or years, and were not made in connection to the decision to lay off or terminate plaintiff. Offenbecher, the decision maker in this case, made only one comment about age in the months before plaintiff was terminated, and that comment was about Misener being a good person to review the domestic violence program. The comment was not directed at plaintiff and not clearly reflective of discriminatory bias. Offenbecher was about the same age as plaintiff, and plaintiff failed to provide evidence to support her claim that other employees were laid off because of their age.

Although Misener told Offenbecher that plaintiff was no longer needed in the program, she did not recommend that plaintiff be laid off, and she was not involved in the decision to lay off or terminate plaintiff. Offenbecher made those decisions. Misener made a comment about the younger generation being more flexible with their work hours in general, but did not imply that plaintiff was inflexible with her work hours or that older people should be replaced because of their age. Misener's other comments, about Offenbecher being close to retirement age, were factually correct, and were not clearly reflective of discriminatory bias. Misener's comment about plaintiff being seen as a mother figure by other employees (because of their close relationship) was made while explaining why plaintiff could not supervise her employees during the review. This comment was not clearly reflective of discriminatory bias. Misener was simply explaining that the relationship plaintiff had with her employees was strong, and it could impact the results of her investigation. She was not showing animus based on plaintiff's age.

Because the comments described previously were mostly made by individuals other than Offenbecher, spread out over time, rarely directed toward plaintiff, and not clearly reflective of discriminatory bias, the comments are not sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward plaintiff.

Plaintiff also argues that the domestic violence program was not really struggling, and that defendant could not prove that the program was struggling without an expert witness. It is undisputed that the total number of people staying in the center decreased while plaintiff was in charge of the center. It is undisputed that defendant had to provide statistics on the use of the center when it applied for grants, and that one of defendant's goals was to increase the number of

people utilizing the center.  Plaintiff was told multiple times that she had to better advertise the center.  It is undisputed that plaintiff kept policies that went against the trauma-informed approach favored by defendant.  Therefore, it is clear that the domestic violence program was not doing as well as defendant wanted it to under plaintiff's leadership.

Even if the domestic violence program was not struggling under plaintiff's supervision, defendant offered other reasons for laying off plaintiff.  Defendant explained that it made financial sense to reorganize the domestic violence program and reassign plaintiff's responsibilities to Misener, who was already working in a similar area and was able to take on the work without extra pay.  Plaintiff has not provided evidence to prove this claim was false.

Thus, plaintiff has failed to prove that a reasonable trier of fact could conclude that discrimination was a motivating factor for laying off or terminating plaintiff.  The trial court did not err when it concluded that there was no genuine issue of material fact and granted defendant summary disposition.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Stephen L. Borrello