*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QUENTIN WHITE,

        Plaintiff-Appellant,

v

HENRY FORD MACOMB HOSPITAL
CORPORATION and MRO CORPORATION,

        Defendants-Appellees.

UNPUBLISHED
August 8, 2024

No. 366723
Macomb Circuit Court
LC No. 2021-001284-PD

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

Plaintiff Quentin White appeals as of right the order granting summary disposition in favor of defendants, Henry Ford Macomb Hospital Corporation (HFMH) and MRO Corporation (MRO) under MCR 2.116(C)(8) and (10). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In a prior appeal, this Court delineated the underlying factual history:

> This case started with a medical-record request that White sent to [HFMH], asking [it] to send medical records to his attorneys. This case is about the proper fees and timing associated with [HFMH's] and defendant MRO Corporation's (MRO) response to that request.
>
> This case involves several provisions under the Michigan Medical Records Access Act (the MRAA), MCL 333.26261 *et seq.*, the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq.*, and the Health Information Technology for Economic and Clinical Health Act (the HITECH Act), 42 USC 17901 *et seq.* It also involves regulations and guidance related to HIPAA and the HITECH Act. Most notably, the 2013 regulations from the United States Department of Health and Human Services (HHS), referred to as the 2013 Omnibus Rule, as well as a document entitled, "Individuals' Right under HIPAA to Access to Health Information 45 CFR 164.524," also referred to as the 2016 Guidance. . . .

-1-

In late December 2020, White was injured in a motor vehicle accident. After the accident, he received medical treatment at [HFMH]. White wanted to file a claim against the at-fault driver, so he retained an attorney. And, as he indicated in his records request, to "properly pursue his personal injury claim, [he] needed his medical record from [HFMH]." So, on February 1, 2021, White signed a record request, labeled "HITECH RECORD REQUEST," asking [HFMH] to send his medical record to his attorney, Brent Sitto. The request explicitly asked that [HFMH] provide the records "in electronic format only using Adobe Acrobat pdf format."

MRO is a medical records provider that contracts with healthcare suppliers, like [HFMH], to maintain, retrieve, and produce individuals' protected health information. White sent his record request to [HFMH] on February 2, 2021. Some time between February 2, 2021, and February 3, 2021, [HFMH] forwarded the request to MRO. On February 3, 2021, MRO generated two letters related to White's record request. The first letter, to Sitto, indicated that MRO was processing the request on [HFMH's] behalf. At the bottom of the letter, MRO, under a heading entitled, "HITECH Rate Dispute," referenced the January 2020 decision of the United States District Court for the District of Columbia in *Ciox Health, LLC v Azar*, 435 F Supp 3d 30 (DDC, 2020). According to MRO's summary, the *Ciox* decision vacated the portion of HHS's 2016 Guidance that "allow[ed] patients to direct medical records to 3rd parties such as your organization, for the same discounted rate allowed to [the] patient . . . ."

MRO addressed the second letter, which confirmed receipt of the record request, to Sitto. It indicated that [HFMH] was "in the process of searching for and retrieving a copy of the requested records" and that, if there were no issues with the request, MRO would send Sitto a "pre-payment invoice." The letter also explained that MRO would send the records to Sitto "upon receipt of your payment." The invoice, however, was also generated on February 3, 2021, the same day as MRO's two letters to Sitto. At the top of the invoice it states: "PREPAYMENT REQUIRED[.]" The invoice indicated that there were 26 pages of records. The balance due under the invoice was $54.56, which included a $25.38 search-and-retrieval fee, $25.40 for "Tier 1" pages printed and $3.78 for "Tier 2" pages printed.

From February 2, 2021 until March 10 2021, neither White nor his attorneys responded to the letters. On March 10, 2021, Sitto sent a letter to MRO addressing its letters regarding White's record request. Sitto's letter noted that White's HITECH record request "was received by your office on 2-2-2021." Sitto indicated that, on March 2, 2021, he or his law firm received MRO's notice about the record request. Sitto quoted language from federal regulations he claimed were applicable, including 45 CFR 164.524(b) and (c)(3)(*i*). Sitto asserted that MRO had to provide the records within 30 days of February 2, 2021, i.e., by March 4, 2021. Sitto indicated it had been over 30 days and, as a result, MRO was "now subject to penalties for violation of federal law." In the same letter, Sitto rejected MRO's reliance on *Ciox* and asserted that MRO could only charge $6.50 under the

HITECH Act. He asked MRO to forward the records and "an invoice for $6.50 maximum."

In mid-March 2021, MRO faxed a letter regarding White's record request to Sitto. MRO reiterated that the provisions Sitto relied on to argue for the $6.50 fee no longer applied. MRO indicated that White and Sitto were "invoiced correctly under HIPAA, HITECH and applicable state law" and that the fee limitations from the HITECH Act only applied to requests from individuals, not third parties, including law firms or situations where "the patient's medical records are being requested to be sent to a third party." The letter also reiterated that MRO would provide the requested copies of records "[u]pon payment of the balance due on the invoice."

Less than a month later, White sued defendants, raising four claims: (1) unlawful detention, and recover possession, of medical records under MCL 600.2920; (2) claim and delivery (replevin) under MCR 3.105; (3) common-law conversion; and (4) declaratory relief, asking the court to determine (a) the applicability of the HITECH Act, (b) the amount defendants could properly charge White, and (c) any other determination necessary to adjudicate the case. The essence of White's claims was that defendants improperly withheld his medical records and he sought to "recover possession" of those records. He alleged that defendants' failure to provide his records impeded his "ability to expeditiously prosecute his injury claims . . . ." White amended his complaint in late May 2021, adding a fifth claim: violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. Under this new claim, White alleged that defendants charged him a fee "grossly in excess of the price at which similar property or services are sold."

In mid-June 2021, [HFMH's] attorney e-mailed White's records to Sitto in PDF format. According to MRO on appeal, this was done "at no-charge" and "to resolve the issue and avoid" litigation costs.

In mid-August 2021, MRO moved for summary disposition of White's claims under MCR 2.116(C)(8) and (10). MRO argued that it was not limited to charging a maximum of $6.50 for the requested records, because, after *Ciox*, that fee limitation did not apply. It also argued that its invoice was proper under the MRAA, which also allowed it to withhold White's records pending payment. MRO further argued that because White requested his records for litigation purposes, his MCPA claim failed as a matter of law under *Slobin v Henry Ford Health Care*, 469 Mich 211; 666 NW2d 632 (2003). [HFMH] concurred in MRO's motion.

White responded, arguing that MRO failed to comply with federal law when it did not act on his record request within 30 days. He also argued that MRO ignored his request for electronic records and improperly charged the state law rate for paper copies. White further argued that MRO's reliance on *Ciox* was misplaced, and that the prepayment requirement under MCL 333.26269(2) conflicted with the HITECH Act and was, therefore, federally preempted. And White asserted that

because he requested his record "for personal purposes for his personal injury claim," this case was distinguishable from *Slobin* and, thus, he had a valid MCPA claim.

After a hearing, the trial court issued an opinion and entered an order granting summary disposition to defendants. The court first found that because an attorney is a third party under the applicable statutory scheme, MRO could properly charge them above the Patient Rate. It also noted that the *Ciox* court vacated the 2013 Omnibus Rule and 2016 Guidance. It also found that White had failed to establish that [HFMH] kept its records in a form other than paper, as required for MCL 333.26269(1)(c) to apply, despite his argument that MRO's invoice was improper because he asked for electronic records. The trial court further found that MRO's fees were reasonable, and that the HITECH Act and related regulations did not prohibit withholding records until prepayment of a fee, as allowed under the MRAA. And the court found that *Slobin* precluded White's MCPA claim because he had requested the records for litigation purposes.

White moved for reconsideration. He argued that the trial court prematurely granted summary disposition before the parties completed discovery. His overarching argument was that, as it related to [HFMH], there was a factual dispute regarding whether its medical records were kept in a form other than paper, such that MCL 333.26269(1)(c) applied. He asserted that discovery on that issue likely would resolve the dispute, noting that had the trial court not granted MRO's dispositive motions, [HFMH] or MRO could comply with discovery orders related to producing various documents and representatives. At the hearing on the motion, the trial court acknowledged that it "should have waited until" after the deposition of [HFMH's] representative to evaluate whether summary disposition was appropriate with respect to [HFMH]. Accordingly, the court entered an order granting in part and denying in part White's motion for reconsideration, setting aside the grant of summary disposition as it related to [HFMH], but denying the motion as it related to MRO.

[HFMH] complied with the discovery orders and produced its keeper of records, Veeta Montgomery, for a deposition. Thereafter, [HFMH] moved for summary disposition under MCR 2.116(C)(8) and (10). It argued that White had failed to establish a factual dispute regarding whether MRO's fee was improper. Focusing on the MRAA and MCL 333.26269(1)(c), [HFMH] argued that the Patient Rate was "limited to requests made by the patient for personal medical use" and, therefore, any request outside those parameters was "not covered" and "left to the states." It also argue[d] that White's MCPA claim failed because of *Slobin*.

After White responded, mirroring many of his arguments in his response to MRO's dispositive motion, and a hearing, the trial court issued an opinion and order granting summary disposition to [HFMH]. The court found that the Patient Rate did not apply because White's request was "made by a third-party." It also found that there was no genuine factual dispute regarding the reasonableness of the fees

-4-

charged. This appeal followed. [*White v Henry Ford Macomb Hosp Corp*, ___ Mich App ___, ___; ___ NW3d ___(2023) (Docket No. 360302), slip op at 1-3.]

After analyzing the applicable statutes, the *White* Court held as follows:

> Defendants failed to act on White's request for his medical records within 30 days, as they were required to under the HITECH Act and related regulations, because they believed that MCL 333.26269(2) allowed them to withhold White's records until he paid the applicable fee. That prepayment provision conflicts with the 30-day requirement under the HITECH Act, so the HITECH Act's 30-day requirement preempts the MRAA's prepayment provision. Still, state law applies for purposes of determining the fee defendants could impose for providing White's records. The trial court correctly applied state law when determining the proper fee, but erred when it found that MRO charged White an appropriate fee; because White requested his records in electronic format, defendants improperly charged him for paper copies. And when medical records are obtained for litigation purposes, as White essentially admits they were here, the MCPA does not apply. The trial court properly dismissed White's MCPA Claim. [*White*, ___ Mich App at ___; slip op at 18.]

This Court remanded the case back to the trial court for a determination of the "appropriate fee based on the actual cost of preparing a duplicate record." *Id*. at slip op at 17. In May 2023, HFMH moved for summary disposition under MCR 2.116(C)(8) and (10). HFMH alleged that, at a status conference held following remand, White disclosed that his sole remaining issue was damages. Specifically, White asserted that if the medical records had been timely received from HFMH, he would have been able to settle the underlying automobile negligence case for a higher amount. HFMH acknowledged that the court scheduled a trial date at which White had the burden of proving his damages. But, HFMH moved for summary disposition of the damages claim, contending that it was undisputed that White had the medical records from HFMH at the time of the automobile negligence settlement negotiations. When White sent his settlement demand letter to Farm Bureau Insurance Company, White possessed the HFMH medical records, summarized their contents in the demand letter, and attached the medical records to the demand letter. Despite White's representation that he suffered damages because of the failure to have access to the HFMH medical records at the time of the settlement negotiations, HFMH asserted that the representation was simply false. Because there was no genuine dispute that White did not suffer his alleged damages, HFMH claimed that it was entitled to summary disposition. And, in light of White's misrepresentations pertaining to access to the medical records at the time of the settlement negotiations, sanctions were appropriate.[1] In June 2023, MRO filed a concurrence with HFMH's dispositive motion.

---

[1] In support of HFMH's motion, it also filed a brief with documentary evidence. This evidence included an e-mail dated June 14, 2021 that reflected HFMH's transmission of White's hospital medical record to him; White's June 22, 2021 settlement demand which contained a summary of White's medical treatment, including at HFMH, and requested $140,000 for loss of consortium

Also in June 2023, White filed his response in opposition to defendants' request for summary disposition. White first objected to allowing HFMH to file a second motion for summary disposition, citing the fact that the original scheduling order provided that the summary disposition filing cutoff period ended in 2021, and HFMH failed to seek leave of the trial court to file the motion.[2] Addressing summary disposition, White asserted that there was no challenge to the pleadings, and therefore, MCR 2.116(C)(8) was not applicable.

Focusing on MCR 2.116(C)(10), White contended that HFMH acknowledged that the sole remaining issue was damages. Because MCR 2.116(C)(10) did not apply to the calculation of damages, summary disposition was inappropriate. Further, White alleged that HFMH mischaracterized White's position. His submission of the HFMH medical records at the time of the settlement demand was not controlling. Rather, White would have received a higher settlement amount if the records had been received on time, and the failure to obtain the records earlier had a negative impact on his settlement. White made his request for his medical record on February 1, 2021, but did not receive his HFMH medical records within 30 days as required by law. White filed suit on April 8, 2021. But, HFMH did not e-mail their medical records until June 14, 2021, waiting more than 130 days to fulfill White's request. This time delay caused White's negotiating power to deteriorate to the point that the opportune time for settlement passed. White asserted that the settlement value of the claim would have been $45,000 if the records had been timely provided instead of "improperly held hostage by Defendants." Because defendants mischaracterized White's claim and failed to support summary disposition with an affidavit, White alleged that summary disposition must be denied.[3]

HFMH filed a reply brief, asserting that MCR 2.116(C)(10) was the appropriate court rule demonstrating entitlement to summary disposition because there was no genuine issue as to any material fact. Specifically, it claimed that there was no issue pertinent to the amount of damages. Rather, "no damages exist[ed]" because White had the HFMH records in his possession and summarized the records in the settlement demand letter to support his request.

The trial court heard oral argument on the second dispositive motion. Defendants asserted that White had the HFMH medical records at the time the settlement was negotiated. Nonetheless, White's counsel argued that the delay in the record's receipt caused harm, stating:

> The records were 130 days, provided 130 days after requested. The negotiating situation changed to the detriment of [White] during that time - - there's an affidavit attached to [White's] response to the motion for summary disposition

---

damages; HFMH's treatment records of White; and White's settlement agreement for $15,000 in the automobile negligence matter dated July 6, 2021.

[2] At the hearing on the second dispositive motion, White did not challenge the timeliness of the motion. Further, White does not raise the issue on appeal or cite authority in support. Accordingly, we do not address this abandoned issue. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019).

[3] Pertinent to the answer to this dispositive motion, White submitted an affidavit from his counsel, Sandy Sitto.

is Exhibit 2, the affiant, the attorney who worked on the case. Her name is Sandy Sitto. And she said that it definitely did have a negative impact on the settlement amount that was finally arrived at after the records were provided, and a demand letter was sent belatedly because of the delay.

The trial court noted that White had the medical records when the settlement demand letter was sent, and the medical records were attached to the demand. In light of the receipt of the records, the court questioned what compelled White to accept a settlement offer that was unfair. White's counsel argued that White's treatment was significantly different when the HFMH records were received 130 days later. It was opined that the case could have been negotiated at an earlier point in time when the case had more value. And, the insurance company would not accept the demand letter unless it was a complete package that included the medical records. Finally, White's counsel offered that a factual dispute was presented. Defendants countered that White continued to treat with other medical providers until two weeks before HFMH provided the medical records. And, the medical records and the settlement demand letter were sent before any litigation was even filed and within a year of the automobile accident. Defendants claimed that this refuted the assertion that the delay in HFMH's record receipt reduced the value of the settlement. White continued to argue that the affidavit by his attorney created a factual issue and alleged that because White's physical condition was worse at an earlier point in time, he would have received a bigger settlement. The trial court granted defendants' request for summary disposition in their favor. From this decision, White appeals.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 448; 980 NW2d 119 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 449. The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*. The documentation offered in support of and in opposition to the dispositive motion is considered in the light most favorable to the party opposing the motion, *id.*, and must be admissible as evidence, *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). Mere conclusory allegations that are devoid of detail are insufficient to create a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362, 371-372; 547 NW2d 314 (1996); *Major v Village of Newberry*, 316 Mich App 527, 550; 892 NW2d 402 (2016). When an opposing party provides mere conclusions without supporting its position with underlying foundation, summary disposition in favor of the moving party is proper. See *Rose v National Auction Group*, 466 Mich 453, 470; 646 NW2d 455 (2002).

A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Id*. Under MCR 2.116(C)(8), summary disposition is appropriate when the opposing party failed to state a claim on which relief can be granted. *In re Lett Estate*, 314 Mich App 587, 595; 887 NW2d 806 (2016). Under MCR 2.116(C)(8), the legal sufficiency of the claim is examined by the pleadings alone with the factual allegations accepted as true and viewed in a light most favorable

to the nonmoving party. *Id.* "The motion may be granted only when a claim is so clearly unenforceable no factual development could justify recovery." *Id.* (citation omitted).

## III. ANALYSIS

White alleges that the trial court erred in granting summary disposition in defendants' favor premised on MCR 2.116(C)(10) because the issue of damages was outstanding, defendants failed to demonstrate entitlement to summary disposition with documentary evidence, and White created a genuine issue of material fact. We disagree.

White contends that the trial court erred in granting summary disposition under MCR 2.116(C)(10) because the rule applies when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." And, HFMH acknowledged that a dispute regarding damages remained. Therefore, summary disposition was inappropriate. But, defendants countered that there was no genuine issue of material fact that White did not suffer his alleged damages—namely, that any delay in the provision of the HFMH medical records did not impact White's $15,000 settlement because White used the HFMH medical records in his settlement demand letter—and therefore, defendants were entitled to judgment as a matter of law. In light of defendants' challenge to the correlation between the timely provision of the medical records and White's settlement acceptance, we conclude that summary disposition premised on MCR 2.116(C)(10) was the valid framework to analyze this dispute.

Additionally, we reject White's contention that defendants failed to support entitlement to summary disposition. Defendants presented documentary evidence demonstrating that the HFMH medical records were transmitted to White's counsel by e-mail on June 14, 2021. On June 22, 2021, White's counsel prepared his settlement damage letter to Farm Bureau Insurance Company. In this settlement demand, White's counsel summarized the HFMH medical records from January 5, 2021 as well as White's medical treatment that continued through May 25, 2021. White offered photographs that purportedly demonstrated disfigurement consisting of marks on his forehead and thumb. Although White raised a claim of noneconomic loss, he principally sought loss of consortium damages consisting of $140,000. Approximately two weeks after the submission of the settlement demand, White agreed to accept $15,000 to resolve his automobile negligence claim. Defendants presented documentary evidence that HFMH's counsel submitted the medical records to White, who was able to use those documents to negotiate a settlement of his claim. Accordingly, defendants made and supported their request for summary disposition with documentary evidence. *Charter Twp of Pittsfield*, 338 Mich App at 449.

Finally, we reject White's contention that he created a genuine issue of material fact. In opposition to defendants' request for summary disposition, White submitted an affidavit from counsel, Sandy Sitto. This affidavit stated that Sitto had worked for three law firms and handled auto accident injury claims when employed by two law firms. Sitto specialized in "processing bodily injury claims," and was involved in the processing and settlement of White's claim. Sitto requested White's HFMH medical record on February 1, 2021, but did not received it until June 14, 2021. Within eight days, White's counsel made the settlement demand to the insurance adjuster for White's auto negligence claim. White's claim settled for $15,000 on July 6, 2021. Sitto's affidavit concluded:

-8-

12. Based on my involvement in this claim, and my years of experience handling similar bodily injury claims, I believe, in my professional opinion, that the Quentin White claim would have settled for a substantially higher amount, in an amount I would have valued at about $45,000, if Defendants had complied with HITECH and provided the records within 30 days, as opposed to more than 130 days later.

Even when viewed in the light most favorable to White, the Sitto affidavit failed to create a genuine issue of material fact demonstrating that White's claim would have settled for $30,000 more if the HFMH medical records had been received within 30 days.[4] Although Sitto may have experience as a processor of bodily injury claims, this affidavit offered a mere conclusion and failed to delineate an underlying foundation to support its position. Nor did White offer any other evidence to that effect, such as an affidavit from a claims adjuster describing the requirements for receipt of a claim, the importance of the initial hospitalization records, and the impact of a six-month delay in presenting a settlement demand even prior to the filing of a lawsuit. In light of this deficiency, summary disposition in favor of defendants was proper. *Rose*, 466 Mich at 470.

Affirmed.

/s/ Anica Letica
/s/ Mark T. Boonstra
/s/ Philip P. Mariani

---

[4] We note that White presented the medical record request to HFMH on February 2, 2021. On February 3, 2021, MRO had received the request. On February 3, 2021, MRO notified plaintiff's counsel that the medical records would be sent upon receipt of $54.56. White's counsel did not communicate with MRO until March 10, 2021, and disputed the fee, contending that $6.50 was the maximum allowed. If the timely receipt of HFMH medical records was crucial to obtaining a maximum settlement of $45,000, it is unclear why White's counsel did not pay the fee to obtain the records and dispute defendants' compliance with the governing statutes.