*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DAVID MCDONALD,

      Plaintiff-Appellant,

v

CITY OF DETROIT,

      Defendant-Appellee.

UNPUBLISHED
December 18, 2024
2:22 PM

No. 367141
Wayne Circuit Court
LC No. 22-003659-CD

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this action alleging violations of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a complaint raising discrimination claims involving race, health, and disability against defendant. Specifically, plaintiff alleged that he signed a personal service contract (PSC) with defendant in 2017. Under the PSC, plaintiff worked in defendant's media services department where he provided maintenance work for the audio and video equipment defendant used for broadcasts. Plaintiff worked 22 hours a week, came into the office five days a week, and was paid an hourly wage without fringe benefits. Plaintiff was also the president and owner of a separate business entity, Communication Services and Engineering (CSE), and he provided services to other cities and schools.

After plaintiff's contract expired, he continued working for defendant's media services. When attempting to negotiate a new contract in August 2019, it was learned that defendant no longer offered PSCs. Instead, defendant offered temporary administrative support services contracts (TASS). Plaintiff seemingly discussed other employment options with Joseph Harris and Marie Williams of defendant's media services as well as Lena Willis, defendant's then deputy chief procurement officer. Although other employment classifications were considered, plaintiff's

-1-

employment options with defendant were allegedly limited because of the payment manner[1] and hours that plaintiff requested. On August 22, 2019, plaintiff was sent an e-mail advising that he was no longer on the schedule because his PSC expired, defendant no longer had PSC positions, and his "on-call" status could not continue. It was contended that, on November 13, 2019, media services sent plaintiff an e-mail requesting that he contact the department to discuss his expired contract and outstanding payments.[2] Approximately one month later, plaintiff purportedly e-mailed a response that he was injured and medically restricted to remain home. Because the department was closing for the holidays, plaintiff was advised to communicate with defendant in the new year.

In May 2020, plaintiff contacted defendant's Internal Operations Committee (IOC) to complain about the nonrenewal of his contract. Plaintiff also filed a complaint with the Equal Employment Opportunity Commission (EEOC) in January 2021, alleging that defendant improperly considered plaintiff's race in deciding not to renew plaintiff's contract. Subsequently, plaintiff initiated this lawsuit. Plaintiff claimed the record demonstrated that defendant discriminated against him on the basis of his race, disability, and serious health issues. Specifically, plaintiff raised a race-based hostile-work-environment claim, a disability-based retaliation claim, and a health-based hostile-work-environment claim.

Defendant moved for summary disposition, contending that plaintiff was barred from filing a claim against defendant under ELCRA because plaintiff was not defendant's employee. It also asserted that plaintiff failed to create a genuine issue of material fact with respect to any of his substantive claims, particularly when he denied having a disability or serious health issues. In contrast, plaintiff claimed he was treated differently than a supplier of defendant that was of Middle Eastern descent, his replacement had lesser experience and credentials, and Williams purportedly started "rumors" about plaintiff's work performance and attendance.

The trial court granted defendant's motion for summary disposition after concluding that plaintiff could not bring ELCRA claims because he was not defendant's employee. Additionally, the trial court held that plaintiff's retaliation and hostile-work environment claims failed because he admitted, during his deposition, that he did not have a disability or a serious medical condition. Plaintiff appeals the trial court's order granting defendant's dispositive motion and dismissing the lawsuit.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 448; 980 NW2d 119 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 449. The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings,

---

[1] It was asserted that plaintiff did not want to receive a W-2 form because of his business, CSE.

[2] In the exhibits submitted in the lower court record, we do not have the benefit of all original correspondence, but some documentation apparently quoted the original e-mails.

depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

## A. EMPLOYER/EMPLOYEE RELATIONSHIP

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because plaintiff was eligible to bring an ELCRA claim against defendant. On this point, we agree.

In *McClements v Ford Motor Co*, 473 Mich 373, 376-377; 702 NW2d 166 (2005), amended in part 474 Mich 1201 (2005), the defendant hired AVI Food Systems (AVI) to operate three cafeterias at its Wixom assembly plant. The plaintiff was hired by AVI as a cashier in March 1998. There, the plaintiff encountered Daniel Bennett, one of the defendant's plant superintendents. In approximately November 1998, the plaintiff declined Bennett's invitations to meet him at a local restaurant on three to four occasions, invitations that Bennett denied making. During that same time-period, the plaintiff alleged that Bennett approached her on two occasions when the cafeteria was closed, grabbed the plaintiff from behind, and made sexual advances. After the plaintiff's refusal, Bennett left the cafeteria. Although the plaintiff allegedly reported the incidents to her union steward, she was advised not to report the incident to the defendant because it would result in her job loss. *Id*. at 377.

In 2000, the plaintiff was approached by one of the defendant's employees who also claimed sexual harassment by Bennett, but the plaintiff again declined to raise allegations against Bennett. *Id*. at 377-378. After learning of Bennett's arrest and conviction for indecent exposure, the plaintiff filed suit against the defendant, alleging that it breached its obligation under ELCRA to prevent Bennett from sexually harassing her.[3] The trial court and the Court of Appeals held that the plaintiff could not maintain a ELCRA complaint against an entity that was not her employer. *Id*. at 379-380.

Our Supreme Court held that "a worker is entitled to bring an action against a nonemployer defendant if the worker can establish that the defendant affected or controlled a term, condition, or privilege of the worker's employment." *Id*. at 389. Because the plaintiff failed to establish that the defendant could affect or control her employment terms with AVI, she could not raise a violation of ELCRA. *Id*. at 390-391.

This Court recently reaffirmed the holding that employment discrimination claims brought under ELCRA are *not* limited to employees. *City of Wayne v Miller*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364138); slip op at 5. In *Miller*, the plaintiff city (the city) sued

---

[3] The plaintiff also raised a claim of negligent retention of Bennett by the defendant, but that claim is not pertinent here.

the defendant Miller (Miller), a former elected city councilman, for breach of fiduciary duties for allegedly disseminating a confidential report addressing the city's work environment. Miller filed a counterclaim alleging ELCRA violations, including discrimination premised on sexual orientation and gender, a hostile-work environment, and retaliation for his reports of discrimination. The city moved for summary disposition of Miller's ELCRA claims, contending that Miller, as an elected public official, was not an employee and an employment relationship between the parties was lacking. The trial court granted the city's dispositive motion under MCR 2.116(C)(8), concluding that Miller was an elected official, not an employee, and failed to meet the requirements for an ELCRA claim. *Id*. at ___; slip op pp 1-3.

This Court reversed, concluding that MCL 37.2202 prohibited certain conduct by an "employer" against "an individual," "an employee or applicant for employment," or against a "person" contingent on the alleged violation. And, an employer was defined as "a person who has 1 or more employees." MCL 37.2201(a). Because the city employed more than one person as alleged in the complaint that referenced interviews with 17 employees, its own pleadings established that it was "an employer" even if it disputed being Miller's employer. *Miller*, ___ Mich App at ___; slip op p 3-4. Accordingly, Miller's pleadings established a valid claim for employment discrimination, and the plain language of the statute did "not limit employment discrimination claims to employees." *Id*. at ___; slip op p 5. Moreover, a "worker" could file an action against a nonemployer defendant when it was established that the defendant "affected or controlled a term, condition, or privilege of the worker's employment." *Id*. (quotation marks and citation omitted).

Here, plaintiff presented sufficient evidence that defendant affected a term, condition, or privilege of his employment. Specifically, defendant assigned plaintiff to work in media services five days a week, for 22 hours, and paid him an hourly wage without fringe benefits. Plaintiff was required to sign in and work in a specific suite. Defendant also reserved the right to terminate plaintiff's contract on the basis of its sole discretion, thereby controlling plaintiff's employment. Therefore, the trial court erred when it held plaintiff, as an independent contractor, was ineligible to bring this claim. However, we affirm the trial court's ultimate determination that summary disposition was proper because plaintiff failed to create a genuine issue of material fact with respect to his substantive claims.

## B. HOSTILE-WORK-ENVIRONMENT CLAIMS

Plaintiff raised a race-based hostile-work-environment claim in Count I of his complaint. To establish a hostile-work-environment claim based on discrimination, the plaintiff must prove that he (1) belonged to a protected class; (2) was subjected to conduct or communication on the basis of his protected class; (3) the conduct or communication was unwelcome and related to his protected status; (4) the foregoing was intended to, or in fact did, interfere substantially with the plaintiff's employment or "created an intimidating, hostile, or offensive work environment;" and (5) respondeat superior. See *Major v Village of Newberry*, 316 Mich App 527, 550; 892 NW2d 402 (2016) (citation omitted). "[W]hether a hostile work environment was created by the unwelcome conduct [is] determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Quinto v Cross and Peters Co*, 451 Mich 358, 369; 547

NW2d 314 (1996) (quotation marks and citation omitted). Conclusory allegations devoid of detail are not sufficient "[to] permit the conclusion that there was such conduct or communication of a type or severity that a reasonable person could find that a hostile work environment existed." *Id.* at 371-372.

On appeal, however, plaintiff does not assert and support the elements of a hostile-work environment claim. Instead, plaintiff contends racial discrimination occurred because he was a member of a protected class, he suffered adverse employment action, he was qualified for the position, and he was replaced or treated differently than similarly-situated employees. See *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607; 886 NW2d 135 (2016). Specifically, in a declaration, plaintiff contends that he was replaced by Chris Brown, "a non-African American worker . . . with lesser experience and credentials[.]"

Documentation offered in support of and in opposition to the dispositive motion must be admissible as evidence. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). Mere conclusory allegations that are devoid of detail are insufficient to create a genuine issue of material fact. *Quinto*, 451 Mich at 362, 371-372; *Major*, 316 Mich App at 550. When an opposing party provides mere conclusions without supporting his position with underlying foundation, summary disposition in favor of the moving party is proper. See *Rose v Nat'l Auction Group*, 466 Mich 453, 470; 646 NW2d 455 (2002).

Plaintiff did not provide admissible documentary evidence to support his contention that he was replaced by an individual outside his protected class with lesser experience and credentials. That is, he submitted a declaration, see MCR 1.109(D)(3),[4] a document that need not be verified or accompanied by an affidavit except "when otherwise specifically provided by rule or statute." MCR 2.116(G)(6) pertains to summary disposition and provides: "Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." And, plaintiff's declaration did not provide a foundation for his conclusions. *Rose*, 466 Mich at 470. Plaintiff admitted, in his deposition, that he was unaware of Brown's credentials, and he relied on hearsay, specifically conversations with other coworkers, to support his claim. Because plaintiff failed to oppose and support his response with admissible documentary evidence, the trial court did not err in granting summary disposition of the race-based hostile work environment claim or as characterized on appeal, the claim of race discrimination.[5]

---

[4] Indeed, MCR 1.109 defines court records and documents and addresses filing standards. It does not govern summary disposition.

[5] In the trial court, plaintiff cited to a "rumor" purportedly started by Williams that questioned plaintiff's attendance and work performance. There was a lack of admissible evidence to correlate any rumor to Williams and to a racial basis. Additionally, plaintiff submitted a declaration of Sam Hanneh, a supplier of Middle Eastern descent to defendant. This declaration does not demonstrate racial bias or discrimination against plaintiff as a similarly-situated individual. While plaintiff

## C. RETALIATION CLAIMS

Plaintiff raised a retaliation claim in Count II of his complaint. MCL 37.2701 provides the following with respect to retaliation claims:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

"[T]o establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 161; 934 NW2d 665 (2019) (quotation marks and citation omitted).

In Count II of the complaint, plaintiff alleged that he engaged in protected activity when he sought treatment for his disability and defendant attempted to reduce plaintiff's work hours because plaintiff sought treatment for his disability. However, during his deposition, plaintiff stated that he did not have a disability and that he did not understand the portion of the complaint stating that he had a disability and sought treatment for it. By so doing, plaintiff admitted that the factual basis on which this retaliation claim was premised was untrue. Because defendant could not discriminate against plaintiff on the basis of plaintiff's disability if plaintiff did not have a disability, summary disposition of this claim was proper.[6]

Even so, plaintiff argues that he successfully raised a race-based retaliation claim because he mentioned retaliation in Count II of the complaint and listed facts sufficient to establish a race-based retaliation claim in the fact section of his complaint, thereby giving defendant notice that he was raising a race-based retaliation claim. Assuming arguendo, that plaintiff sufficiently pleaded a race-based retaliation claim without considering the claims of disability,[7] plaintiff failed to create

---

received a PSC, worked on site in media services as an engineer, and received an hourly wage, Hanneh was merely a supplier and provided quotes for specific projects. Plaintiff's superiors indicated that Hanneh's company worked on special projects only. In addition to failing to satisfy MCR 2.116(G)(6), this conclusory declaration does not create a factual issue pertaining to plaintiff's claims.

[6] During oral argument, plaintiff's counsel withdrew the portion of the complaint insofar as it related to plaintiff's disability.

[7] Curiously, plaintiff did not seek to amend the complaint in accordance with MCR 2.116(I)(5) ("If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then

a genuine issue of material fact concerning his race-based retaliation claim. With respect to the first prong, plaintiff's complaint to defendant's IOC did not constitute a protected activity because he failed to mention defendant's treatment of non-Black employees or complain about an ELCRA violation in that complaint. See *Rymal v Baergen*, 262 Mich App 274, 315; 686 NW2d 241 (2004) ("MCL 37.2701(a) prohibits retaliation where a party lodges a charge or a complaint about a violation of the CRA.").[8] Plaintiff admitted his complaint to the IOC did not allege that his race was the motivating factor for any of defendant's conduct. In an attempt to demonstrate that he engaged in protected activity, plaintiff references e-mails he sent to defendant in 2017 discussing terms of his payment. However, these e-mails were part of his contract negotiations and did not mention anything about race, discrimination, or ELCRA violations.

Further, plaintiff failed to create a genuine issue of material fact regarding whether defendant's decision not to renew his contract was caused by his protected activity because plaintiff filed his complaint with the EEOC after defendant decided not to renew plaintiff's contract. Plaintiff complained to the EEOC on January 9, 2021. Plaintiff was sent an e-mail in August 2019 to inform him that defendant was not going to renew his PSC because defendant was no longer using that type of contract. This e-mail demonstrates that defendant decided not to renew plaintiff's contract over two years before plaintiff claimed to engage in protected activity. In light of the foregoing, summary disposition on plaintiff's race-based retaliation claim was proper.

Affirmed.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica

---

before the court shows that amendment would not be justified."), to remove the disability and health issue allegations and clarify the grounds for his claims.

[8] See *Hamed v Wayne Co*, 490 Mich 1, 9; 803 NW2d 237 (2011) (using "CRA" as a term for the ELCRA).